LAURA M. HOLLENBECK, Appellee, v. THE CITY OF MAR-
ION, Appellant.

**Damages for Polluting Stream:** REMOTENESS: *Effect of drinking water on cows.* Where, in a suit for polluting a stream on plaintiff's farm, damage is claimed for depreciation of the

116   69
119  476
119  477
119  478
f119  483
d119  484

116   69
e123  334
123  335·
116   69
125  631

116   69
129  473
129  482

rental value of the farm, physicians may testify as to the probable effect on milch cows of drinking the water after its contamination, over objection that such evidence is too remote.

MEASURE OF DAMAGES. The measure of damages for the pollution of a stream through a pasture is the difference in the rental value before and after the pollution, and not the reasonable value of procuring water for the stock, the value of the time and trouble in procuring it, or what it would reasonably have cost to furnish an adequate supply of water for the stock.

SEPARATING DAMAGES. In a suit for damages to a portion of a farm by discharging sewage into a stream, defendant cannot complain that plaintiff did not include damages to the whole farm, where the portion for which damage was claimed was pasture separated by a highway from the tilled portion, which was well watered.

*Claiming too little.* In a suit for damages for the pollution of a stream by sewage, defendant claiming that the nuisance was permanent, cannot complain because plaintiff only asked damages as for a temporary nuisance.

**Evidence:** EXPERT AND OPINION TESTIMONY: *Quality of water in polluted stream.* In a suit for damages for polluting a stream, it is not error, as giving an opinion, for a non-expert to state that after the sewer was connected with the stream, the water was sticky, nasty and filthy.

*Harmless error.* Such evidence though erroneously admitted, is without prejudice, where the witness fully narrates the facts on which he based his conclusion.

SAME. Where a stream is polluted by sewage, in an action for damages, experts may testify as to bacteria in water polluted by sewage, how far the germs can be carried, and the dangers resulting therefrom.

HARMLESS ERROR. Where a witness is permitted to fully explain the construction of a sewer, and other matters indicating permanency, a refusal to permit him to answer a direct question whether the sewer is permanent, though erroneous, is without prejudice.

*Same.* In a suit for damages to a portion of a farm by discharging sewage into a stream, permitting a witness to testify as to the value of the whole tract before the sewer was connected, is without prejudice, where he was not asked as to its value after the sewer was constructed.

CHARGE AND PROOF.   In an action for damages for polluting a
stream, an instruction which, after copying the pleadings,
states that under the foregoing statement the burden is on
plaintiff to establish some of the material allegations of her
petition, and then, following Code, section 5078, defines a nui-
sance as causing or continuing any building, place or thing
which, by occasioning noxious inhalations, becomes dangerous
to health, suffering filth or noisome substances to remain in
any place to the prejudice of others, or corrupting or render-
ing unwholesome the water of any stream or pond, and con-
cluding that, if the jury found any of such conditions were
created by defendant, they should find for plaintiff, is erro-
neous, where there is no evidence of the existence of most of
the matters referred to.

Curing. charge.   Such instruction was not cured by a further in-
struction that defendant was liable if the stream was rendered
dangerous by the offensive matter for domestic purposes or
animal use, where there was no evidence that the water was
ever used for domestic purposes.

Appeal:   Charge too favorable to complaining party.   In a suit
for damages for polluting a stream on a portion of plaintiff's
farm used for pasturage, defendant cannot complain of an in-
struction that plaintiff could not recover if there was sufficient
water on the premises to supply the stock during the pastur-
ing season without additional expense, as it was more favorable
to him than he was entitled to.

*Appeal from Cedar Rapids Superior Court.*—HON. T. M.
GIBERSON, Judge.

WEDNESDAY, FEBRUARY 12, 1902.

ACTION at law to recover damages to plaintiff's farm,
due, as is alleged, to defendant's emptying its sewage into a
running stream which passes through the land.   There was
a trial to a jury, resulting in a verdict and judgment for
plaintiff, and defendant appeals.—*Reversed.*

*C. J. Haas* and *D. E. Voris* for appellant.

*Rickel, Crocker & Tourtellot* for appellee.

DEEMER, J.—Plaintiff and her husband are the owners of 94.67 acres of land in Linn county, through which passes a stream known as "Indian Creek." In 1893 defendant established a sewerage system, and emptied the sewage gathered thereby into said creek. It is claimed that this made a nuisance of the stream, to plaintiff's damage, and she asks judgment for the decrease of the rental value of the farm, due to the presence of this nuisance. When on the witness stand, plaintiff's husband was asked as to the condition of the creek both before and after the establishment of the sewer outlet. He stated, in response, that before, "it was nice, good water." He was then asked to describe the condition of the creek after the sewer was connected with it, and he said, "Well, it is filthy, and foul, and nasty, and sticky." Being asked to describe the sediment, he said, "Well, it is all slimy, and nasty, and sticky." This was all over defendant's objections; and after the evidence was all received, defendant moved to strike it, because not responsive, and evidently the conclusion and opinion of the witness. We do not reverse because the answer was not responsive, if that answer is competent and relevant, had it been given in response to a proper question. Of course, a nonexpert witness must, as a rule, state facts, and not conclusions; but the dividing line between a fact and an opinion is often indistinct and difficult to explain. The condition of the water before and after the alleged nuisance was created was a material inquiry, and this condition cannot always be presented to a jury through a description of the thing inquired about. *Yahn v. City of Ottumwa*, 60 Iowa, 429. Moreover, it ofttimes happens that facts are collective, and are the result of observation and knowledge. In such a case the result is a fact, and not an opinion. That water is sticky, nasty, and filthy is a fact; but, if an opinion, it is clearly admissible under well-settled rules. *State v. Rains-*

*barger,* 71 Iowa, 746; *Pence v. Railway Co.,* 79 Iowa, 389; *Winter v. Railway Co.,* 74 Iowa, 450. But, conceding there was error, the error was without prejudice; for the witness narrated as fully as possible the facts from which the conclusion was drawn, in other parts of his evidence.

Certain doctors, who showed themselves competent to speak, were allowed, over defendant's objection, to testify to the probable effect upon milk cows of drinking the water after its contamination by the sewage, as to the presence of disease germs in the water, etc. This testimony is said to be too remote and speculative, for the reason, as we understand it, that, as plaintiff did not show that her cattle drank of the water and were poisoned, there was no method by which to tell whether or not disease germs were present, and, if present, whether or not in such quantities as to produce disease or death. Surely it will not be claimed in such a case as this that plaintiff must lead her cattle to drink of the water, and see whether or not it injuriously affected them, before she may bring her suit for damages. The probable effect of the discharge of the sewage into the creek was a proper matter of inquiry, and it could only be established by those having special knowledge of the subject. It was shown that these doctors had some of the qualifications needed to enable them to speak, and the weight of their evidence was for the jury. None of the cases relied on by appellant seem to be in point. Without exception they relate to personal injury cases, wherein experts were allowed to testify as to contingent and speculative consequences which might result from an injury. In this case, the damage claimed was depreciation in the rental value of the land and the matters inquired about were properly received in evidence as affecting that value. *Shively v. Railway Co.,* 74 Iowa, 169.

Certain of the hypothetical questions propounded are said to have no foundation in the facts disclosed. In this we do not agree with counsel. They had sufficient basis to justify the court in overruling objections thereto. These experts were permitted to testify regarding the presence of germs and bacteria in water polluted by sewage, how far these germs could be carried, and the dangers resulting therefrom. All this was a proper matter of inquiry.

II. In all there were in the Hollenbeck farm about 190 acres of land. The petition only asked for damages to 94 acres thereof. It is shown that the entire premises were used as one farm, however; and it is insisted that the court erred in its rulings on evidence, and in its instructions, in not requiring plaintiff to include damages to the farm as a whole. The only shadow of merit in this contention lies in the fact that on parts of the farm not included in the 94 acres there were springs and wells of pure water for stock and domestic purposes. Generally the complaint in such cases is that plaintiff is seeking to include too large a tract, instead of too little. There may be cases, although we are not able at present to state one, where a plaintiff should not be permitted to segregate his farm for the purpose of claiming damage to a part thereof. But this is not one of them. The evidence here shows that the 94 acres of pasture were separated by a highway from the residence and tilled portion of the land; that the 94 acres through which the creek ran were devoted to pasturage purposes, and to that alone, and that it was a mile or more away from the dwelling house and other improvements; and that plaintiff was compelled to drive her stock a considerable distance, or to erect new fences, reservoirs, and pipe lines, in order that they might have pure water. However, we do not think defendant is in a position to complain because plaintiff asked damage to a small tract

of land.  All the matters to which it refers in argument
could be shown in order to determine the damage done that
particular tract.  If wells or springs of pure water were
close at hand, doubtless this fact could be shown as affect-
ing the question of depreciation in the rental value.  Plain-
tiff evidently concluded that nothing but the pasture was
damaged.  If that was her conclusion, defendant is not in
position to claim that the remainder of the farm was also
damaged.  If the remainder was so situated as to mitigate
the damage to that chosen, this fact could be shown on cross-
examination of plaintiff's witnesses or by independent sub-
stantive proof.  Moreover, the court in the eighth instruc-
tion presented this feature of the case.  That instruction
reads as follows:  "If you find from the evidence that from
June 1, 1893, to June 1, 1898, there was sufficient water on
the premises to supply all the stock that could reasonably
be pastured on the premises in controversy during the pas-
turing season without any additional expense to the plain-
tiff, then your verdict will be for the defendant."

A witness who showed himself qualified was asked as
to the rental value of the whole tract before the sewer con-
nection was made.  To this defendant objected.  The ob-
jection was overruled and the witness answered that the
rental value was from $3 to $3.50 per acre.  This was
all that was asked regarding the entire tract; and,
if we should conclude that the ruling was erroneous,
the error was without prejudice.  Had he given the value
after the sewer system was established, we might then have
something to indicate prejudice; but nothing of the kind
was shown.  It will be noted that counsel are hardly con-
sistent in their claims. They say in one place that the whole
farm only should have been considered, and in another that
the court was in error in allowing evidence as to the rental
value of the whole tract.  We think we have sufficiently dis-
posed of their contention.  *Waltemeyer v. Railway Co.,* 71
Iowa, 626.

Further, it is claimed plaintiff could have protected herself from damage by rearranging her farm and fences, or by digging wells, or piping pure water onto the pasture land; that in no event could plaintiff recover more than was necessary to make these improvements; and that the measure of recovery should be the amount necessary to be expended to save plaintiff from loss, and not the rental value of the land. It is doubtless true that one must protect himself from the injurious consequences of the wrongful act of another, where he can do so by ordinary care and effort and at moderate expense. In this case plaintiff had the undoubted right to use the stream flowing through his land, and defendant was responsible for polluting the waters thereof. Ordinarily the measure of damages for such pollution is the depreciation in the rental value of the land. See cases hitherto cited. Of course, if plaintiff could by moderate expense have saved herself from the consequences of the wrong, it was her duty to do so. But she was not required to make an entire change in her methods of farming, nor to go to any great expense for the purpose of avoiding the consequences of defendant's wrong. If by a small amount of piping, or otherwise, plaintiff could have saved herself from the consequences of the wrong, perhaps the expense of making the improvement would be the extent of her loss. But it must be remembered that the stream ran through her land; that, unless it was fenced, live stock was likely to go to it and to drink the polluted water; and that to guard against the danger both sides of the stream would have to be fenced, and an entire change made in the use and operation of the farm. One in the wrong is hardly in position to insist on such a change. The trial court was right in its instruction that the measure of damage was the difference in the rental value of the farm before and after the pollution of the stream, and in denying defendant's request to the effect that her damage

was the reasonable value of procuring water for her stock, the value of the time and trouble in procuring the same, or what it would reasonably have cost to furnish an adequate supply of water for her stock.

It is claimed that the nuisance is permanent in character, and that the measure of damage is, not the depreciation in the rental value but the permanent depreciation in the value of the property as a whole. It may be that the sewer system was permanent in character; but it does not follow that its use will always be such as to constitute a nuisance. It is well known that modern scientific research has discovered means of disinfecting and deodorizing sewage, so that it is practically innocuous. But, if this were not true, it does not appear that it was necessary to empty it into Indian creek. Many systems are now constructed which do not empty into creeks or streams, but upon open fields. While the system may be said to be permanent, it does not appear that the nuisance created thereby may not at any time be abated by the defendant or by the court. See *Shively v. Railway Co.,* 74 Iowa, 169; *Bizer v. Power Co.,* 70 Iowa, 145. But we do not decide this point; for, conceding that this was and is a permanent nuisance, and that plaintiff might have recovered damages past, present, and prospective, by showing the difference in the value of the land before and after the sewer system was established, still it does not follow that defendant may complain of the rule adopted by the trial court. Plaintiff saw fit for some reason to treat this as a continuing or temporary nuisance, and asked damages accordingly; that is to say, asked damages for depreciation of rental value, as she might do under the rule announced in *Ferguson v. Manufacturing Co.,* 77 Iowa, 576; *Park v. Railroad Co.,* 43 Iowa, 636; *Shively v. Railway Co.,* 74 Iowa, 196; *Loughran v. City of Des Moines,* 72 Iowa, 382; *Randolph v. Town of Bloomfield,* 77 Iowa, 50, and other like cases.

Surely the rental value of her premises was depreciated by the nuisance, whether it was temporary or permanent. If she saw fit to treat it as temporary and remedial in character, defendant is in no position to complain because she did not ask for future or prospective damage in the form of depreciation in the market value of the entire farm.

Should plaintiff bring another action on the theory that the nuisance is a continuing one, it will then be pertinent to inquire whether or no this action is a bar. Defendant did not plead the statute of limitations, but insisted all through the trial that the measure of recovery was compensation for the trouble and expense plaintiff might have been put to in order to secure pure water for her stock. Whether the nuisance was permanent or temporary, plaintiff under the issues was entitled to recover the depreciation in the rental value of her farm during the time for which she claimed.

Defendant offered to show that the system was intended to be, and was, permanent in character; but the witness called for that purpose was not permitted to answer a direct question which sought to elict the information. However, the witness was permitted to fully explain the manner and method of construction, how and under what authority the sewer system was established, and various other matters indicating permanency. Even if the ruling on the direct question was erroneous, the error was without prejudice. Had defendant asked that the entire damage be assessed on the theory of the permanency of the nuisance, doubtless it would have had that right. But this, as we have seen, it did not do. True, in its answer it refers to the fact that the system was permanent, but it did not ask that the damages be assessed on this theory. On the contrary, it denied all damage and pleaded a right to discharge the sewage into the stream. There is no doubt that plaintiff could have elected, as we have said, to treat the nuisance as a continuing one and not as permanent, so far as

this case is concerned. Whether or not recovery herein will bar another action is a matter which does not require decision at this time. As supporting these views, see *Park v. Railroad Co., supra; White v. Railroad Co.,* 113 N. C. 610, (18 S. E. Rep. 330, 22 L. R. A. 627, 37 Am. St. Rep. 639) ; *Railroad Co. v. Grabill,* 50 Ill. 241; *Watts v. Railroad Co.,* 39 W. Va. 196, (19 S. E. Rep. 521, 23 L. R. A. 674, 45 Am. St. Rep. 894) ; *Jackson v. Kiel,* 13 Colo. Sup. 378, (22 Pac. Rep. 504, 6 L. R. A. 254, 16 ____. St. Rep. 207) ; *Ridley v. Railroad Co.,* 118 N. C. 996, (24 S. E. Rep. 730, 32 L. R. A. 708) ; 3 Sutherland, Damages (2d Ed.) section 1046. In any event, defendant is not in a position to complain because plaintiff did not ask for all the damages to which she was entitled.

III. In stating the case to the jury, the court in effect copied the pleadings, and then said, "Under the foregoing statement of the issues, the burden of proof is upon plaintiff to establish some of the material allegations of her petition," etc. This as followed by the statutory definition of "nuisance" as found in section 5078 of the Code; and the court then said that, if the jury found any of the conditions referred to in that section were created or continued by the defendant, then they should find for the plaintiff. Among these conditions were the erection and continuance of a building which, by occasioning noxious exhalations, offensive smells, etc., became dangerous to public health; the causing or suffering of any offal, filth, etc., to be collected or remain in any place to the prejudice of others; or the obstructing or impeding of the passage of any navigable stream. It is manifest there was no evidence of any of these matters, and that an abstract definition of the term "nuisance," coupled with the concluding statement to which we have referred, was calculated to mislead the jury. If the other instructions had properly referred to the exact complaint, perhaps we might say there was no prejudice. The instructions so far refer-

red to were not only without support in the evidence, but the one following the statement of the issues was positively misleading, in that it directed the jury to find for plaintiff if they believed some of the material allegations of the petition to be true. The instruction which it is claimed cured the error was as follows: "If you find from the evidence that during any of the period, from January 1, 1893, and up to June 1, 1898, the sewage from the city of Marion, emptying into Indian creek, befouled the waters thereof during any of said period, and caused the same to become offensive, or rendered the same dangerous for domestic purposes or animal use, and you believe from the evidence that this condition extended to that portion of Indian creek running across the land in controversy, then you should find that the emptying of said sewage into said creek was a common and public nuisance." Turning to the evidence, it is clear that this did not cure the error. There was no evidence whatever that the water had ever been, or would ever be, used for domestic purposes. The stream was a long distance from the dwelling house, and there is no pretense that the water had ever been used for domestic or household purposes. The action, as has been observed, is for damages due to depreciation in the rental value, and not for permanent injuries to the farm. Under this state of facts, the action being purely for past damages, we think the instruction was erroneous, for the reason that it was not based on any facts in evidence. It permitted the jury to enter the domain of speculation, and to find that the defendant's act created a nuisance, because it affected or destroyed the potability of the water. Regard must be had of the use to which the land has been put during the existence of the nuisance, in order to show that plaintiff suffered damage different from that sustained by the general public, as well as the amount thereof. Vide *Tallman v. Railroad Co.*, 121 N. Y. 119, (23 N. E. Rep. 1134, 8 L. R. A. 173); *Hatfield v. Railroad Co.*, 33 N. J. Law. 251:

*Dorlan v. Railroad Co.,* 46 Pa. St. 520. Under the instruction the jury may have found that defendant created a nuisance, although there is not a word of evidence that plaintiff ever used, or intended to use, the water for domestic purposes. As sustaining our conclusion on this branch of the case, see *Ingram v. Railroad Co.,* 38 Iowa, 669.

IV. We have already referred to the eighth instruction. It is now said that it is erroneous, in that it presents an incorrect rule for the admeasurement of damage. It will be observed that the instruction does not relate to the measure of damage, but to the plaintiff's duty to protect herself from the consequences of the defendant's wrong. The exact complaint is that the test is, not whether the premises would supply enough water for all the stock that could reasonably be pastured, but whether it supplied enough for the stock plaintiff in fact pastured thereon. It may be conceded that, considered abstractly, the instruction was wrong; but, as applied to the facts in this case, it was really more favorable to the defendant than it was entitled to. Our views on this question have already been stated in a former part of this opinion, and need not be here repeated. Under the peculiar facts of this case, we do not think the plaintiff was bound to go to the extent claimed to protect herself from the consequences of the defendant's wrong. The instructions as a whole were loosely drawn, and it is manifest that the jury had no clear conception of the case presented. It might have found that a nuisance existed because the water was dangerous for use for domestic or household purposes, although there is no evidence whatever that plaintiff did, or could, use it for that purpose.

For the error pointed out, the judgment is REVERSED.