(No. 5748. March 6, 1933.)

IDAHO GOLD DREDGING CORPORATION, a Corporation, Appellant, v. BOISE PAYETTE LUMBER COMPANY, a Corporation, Respondent.

[22 Pac. (2d) 147.]

Hawley & Worthwine and Luther W. Tennyson, for Appellant.

Alfred A. Fraser and Richards & Haga, for Respondent.

MORGAN, J.—April 13, 1928, appellant acquired, by purchase from Gold Dredging & Power Corporation, placer mining ground on Grimes Creek, in Boise county. This ground contained deposits of gold in the sand and gravel of the creek bottom, was valuable for these deposits alone and could be successfully mined only by use of a dredge which operated in and dipped the gold bearing sand and gravel from a dredge pond. Appurtenant to the mining ground was a water right to the waters of the creek to be used in mining.

Respondent owned timber growing on the watershed of Grimes Creek and its tributaries and in 1920 began cutting and removing it. These activities continued until 1926, when removal of the timber was completed and its operations ceased in that part of the country.

As a part of its equipment respondent caused log chutes to be constructed and used down the hillsides and along the gulches through the country where the timber grew. Over parts of the way there was so little grade it was economical

to lubricate the chutes with grease and oil and thereby reduce the friction created in passing logs over them to landings adjacent to respondent's railroad, by means of which they were transported to its mills.

Much of the lubricant placed on the chutes dropped off and saturated the ground and soaked into trash and bark which accumulated in and near tributaries of Grimes Creek. It appears from the testimony of appellant's witnesses that such quantities of grease and oil, so placed on the watershed of Grimes Creek, found their way into the stream and into the dredge pond, both before and after the purchase of the ground by appellant, that in the operation of the dredge the gold, and mercury used in mining, were contaminated to such an extent that the gold would not amalgamate and a large part of it escaped over the riffles and was lost and the ground could not, because of the grease and oil, be mined at a profit; also that grease and oil were still present in the stream and on and in the trash, bark and earth at about the time of the trial in October, 1930, and that the value of the mining ground had been thereby totally destroyed.

Gold Dredging & Power Corporation assigned to appellant its cause of action arising out of the damage to the mining ground, and appellant, on June 25, 1929, filed a complaint against respondent to recover damages caused by the grease and oil. The third amended complaint, upon which the case was tried, contains two causes of action, one for damage occurring between June 25, 1925, and April 13, 1928, when the ground was owned by appellant's predecessor, the other for damage occurring subsequent to the purchase.

The case was tried and submitted to a jury upon the theory that the measure of damages was the difference between the value of the mining ground after the waters of Grimes Creek had become polluted with grease and oil, and its value as it would have been had such pollution not occurred.

In its instructions the court withdrew from the consideration of the jury the cause of action for damages subsequent

to the purchase of the mining ground, and the trial resulted in a verdict for appellant on the remaining cause of action. Judgment was rendered on the verdict and was by order, made pursuant to a motion by respondent, set aside and a new trial was granted. The case is here on appeal from that order.

The motion was granted on two grounds, stated thus in the order:

"Said motion is granted on account of error in the instructions to the jury relating to the measure of damages and in the failure of the court to grant defendant's motion for the direction of a verdict, upon the grounds specified in the memorandum decision this day filed herein."

The memorandum decision appears in the transcript and we have examined it and the evidence to determine: 1. Whether the court erred in giving instruction as to the measure of damages; 2. Whether it should have instructed the jury to find for respondent; 3. Whether a new trial should have been granted on any ground stated in the notice of motion and which has been pointed out and urged by respondent on appeal.

In the memorandum decision it is said:

"The Court instructed the jury upon the theory that under the facts of this case the plaintiff—and in this memorandum, for convenience, the word 'plaintiff' will be used to include plaintiff's assignor—had the option to treat an obviously continuing nuisance as a permanent nuisance, and to claim as an original damage the entire present and future damage that could affect its property if the nuisance were to exist perpetually, the measure of damage in such case being the difference between the value of the property as it would be in the absence of the injury, and its value with such injury occurring. The propriety of the instructions, and particularly of Instruction No. 9, depends entirely upon the correctness of the Court's assumption of plaintiff's right to elect which sort of damage to claim."

If error was committed in charging the jury as to the measure of damages it is to be found in instruction No. 9, which is as follows:

"If under these instructions you find for the plaintiff, its damages, if any, must be determined as of the time when, if ever, the oil or grease first contaminated the waters of Grimes Creek to such an extent that mining operations upon the mining claims involved here would be interfered with. If at that time, notwithstanding the fact that oil or grease polluted said waters, said mining claims were of value, the difference between their value after the appearance of said oil or grease and their value as it would have been had not such oil or grease been present, will be the measure of plaintiff's recovery. Plaintiff has no right to recover such added damages, if any, as it suffered by actually dredging the ground and mixing the gold therein contained with any oil or grease that was upon the water and depleting the gold content by extraction thereof. Such acts were its own and not defendant's, and defendant is not liable for their consequences. If your verdict is for the plaintiff, you will, therefore, assess its damages at the difference between the value of the mining claims as it was when oil first appeared upon Grimes Creek running through them in sufficient quantity to interfere with mining operations, and its value as it would have been at that time if Grimes Creek had not been so polluted; and in that amount you cannot include any damage to the mining claims themselves by reason of being thereafter dredged, whether such added damage be by way of mixing oil and grease with the gold and other materials or whether it be by depleting the gold content and lessening the value of the gold for future dredging operations, or otherwise.

"In determining the value of the mining claims immediately after such pollution of the water, if there was such pollution, you may take into consideration the question of whether the grease and oil upon the water of Grimes Creek would in the course of time disappear so as not to inter-

fere with mining operations, and if so the time within which it would so disappear, and any other facts and circumstances in evidence which may bear upon the question of said value.

"If you find from the evidence that oil and grease, if any there was coming into Grimes Creek from the timber properties, would within a reasonably determinable time disappear to such extent that it would no longer interfere with mining operations, the damages to plaintiff, if any you find, cannot exceed compensation for the mere delay in conducting mining operations thereon caused by such grease or oil."

In granting the motion the court concluded the grease and oil which found their way into Grimes Creek and the dredge pond, causing loss of gold, constituted a temporary nuisance and that, therefore, damages, measured by the resulting depreciation in value of the mining ground, could not be recovered.

There are a great many cases wherein the rule is stated to the effect that if defendant has damaged plaintiff's property by means of a temporary nuisance, or one which can be abated, recovery for temporary injury only can be had and the difference in the value of the property before and after the injury is not the proper measure of damages. This rule is based on the theory that abatement of the cause of injury will abate the injury and it should be applied only in cases wherein this is true. After all, it is the character of the injury, whether temporary or permanent, and not the character of the cause of it, which controls.

In *Oklahoma City v. Page*, 153 Okl. 285, 6 Pac. (2d) 1033, 1034, the supreme court of Oklahoma said:

"Although in an action for a temporary nuisance there can be no assessment of damages upon the theory that the nuisance is permanent, because that would permit a recovery for what has not been done and what it cannot be considered will be done, it does not follow that if permanent damage has actually been sustained from the temporary

nuisance and is not conditioned upon future conduct, recovery for it can be denied. . . . .

"It is true that for a permanent nuisance the measure of compensation is one sum for all damage, and the allowance is whatever difference in market value results from a consideration of all of the damage, but it does not follow that a difference in market value cannot be a proper measure of recovery for damage done by a temporary nuisance, so far as such a difference has actually resulted, solely from what has already been done, and is not required to be at all conditional upon a further continuance of the tortious conduct. While for a temporary nuisance there can only be a recovery for the wrong already committed, that in no manner denies recovery for damage that has resulted in depreciation in value not dependent upon prospective cause."

See, also, *Mid-Co Gasoline Co. v. Back*, 95 Okl. 29, 217 Pac. 1041; *Risher v. Acken Coal Co.*, 147 Iowa, 459, 124 N. W. 764; *Hollenbeck v. City of Marion*, 116 Iowa, 69, 89 N. W. 210; *Ridley v. Seaboard & R. R. Co.*, 118 N. C. 996, 24 S. E. 730, 32 L. R. A. 708; Id., 124 N. C. 34, 32 S. E. 325; *Smith v. City of Sedalia*, 182 Mo. 1, 81 S. W. 165; *Kellogg v. City of Kirksville*, 132 Mo. App. 519, 112 S. W. 296; Id., 148 Mo. App. 1, 129 S. W. 57; *Clark v. Lanier*, 104 Ga. 184, 30 S. E. 741.

The case at bar is not to be classified with those nuisance cases wherein the removal of the cause will abate the nuisance. In this case all the grease and oil to be placed on the watershed had been placed, and were there, prior to the commencement of the action; they await only the forces of nature to transport them to the point where they will prevent the recovery of gold, and the value of the mining ground is depreciated accordingly. The injury to the mining property, so far as it may be accomplished by human agency, has been done. Recovery in this action bars future recovery for the same cause and there is no reason why appellant should not now have compensation for

all its damage, measured by depreciation in value of its property, caused by the nuisance.

In its memorandum decision the court stated:

"It is further obvious that the nuisance existing on defendant's premises was abatable, in great part if not entirely. The accumulations of oil and grease at the log landings could have readily been destroyed or removed, as could much of the accumulations elsewhere, without undue expense or labor."

This statement is without support in the record. There is nothing in respondent's answer to indicate it considered the nuisance abatable nor does it appear to have offered to try to abate it. The amount of grease and oil placed on the watershed and the extent to which it was distributed along the tributaries of Grimes Creek would justify a jury in concluding abatement of the nuisance would be impractical.

Ern G. Eagleson, a witness produced by appellant, testified that he made an inspection of respondent's log chutes in the country tributary to Grimes Creek and estimated their length to be about 35 miles, and that about half of this mileage was greased. J. A. Daley and Paul Poncia, also called by appellant, testified to the use of from 25 to 30 gallons of grease a day on a quarter of a mile of chute. This testimony, as to the quantity of grease used and the extent of the territory over which it was scattered, is undisputed.

In *Union Oil & Min. Co. v. Bowman,* 144 Okl. 54, 289 Pac. 296, 297, the court said:

"We are inclined to the view that where a large quantity of oil or oil sediment, known as base sediment, escapes into a stream of water and is deposited on the banks, around the trees, and in the folds of the sand or earth, in the bottom of the stream, which is a natural consequence where water is running, the injury, in a relative or practical sense, is of a permanent nature. The word 'permanent' in its legal sense is not equivalent to 'perpetual' or 'unending' or

'unchangeable.' 3 Words and Phrases, Second Series, p. 968.''

Furthermore, the parties to an action are bound by the theory on which they try it. This case was not tried on the theory that the injury to appellant's property was temporary. There is neither allegation nor proof that the presence of grease and oil on the watershed and in the dredge pond was abatable, nor when, if ever, it might be expected to abate itself, nor was any instruction requested based on the theory of an abatable nuisance.

The theory on which the case was tried is further disclosed by the following which occurred during the direct examination of one of appellant's witnesses.

''Q. What was the value of that portion of the property which was thereafter dredged by the plaintiff, Idaho Gold Dredging Corporation, up until the 4th of June, 1929?''

Counsel for respondent:

''I object to that as incompetent, irrelevant and immaterial, and not the proper measure of damages in a case of this character; the rule is, what was the value immediately before the oil and grease was placed upon it, and what was the value after.''

Counsel for appellant:

''You can't prove that all at once, your honor.''

In *Bielman v. Chicago, St. Paul & Kansas City Ry. Co.,* 50 Mo. App. 151, it was urged that the difference in value of property before and after injury by a nuisance which could be abated was not the proper measure of damages. The court said:

''However, the defendant cannot now be heard to complain of the measure of damages adopted in this case; for as appears by the record the case was tried, and witnesses questioned by both sides without objection, on the theory that if plaintiff was entitled to recover at all the measure of his damages would be the depreciation in value of the property brought about by the location of the stock yards.''

See, also, *Brown v. Hardin,* 31 Ida. 112, 169 Pac. 293;

*Hindman v. Oregon Short Line R. R. Co.*, 32 Ida. 133, 178 Pac. 837; *Krebs v. Bambrick Bros. Const. Co.*, 144 Mo. App. 649, 129 S. W. 425; *Chicago, I. & L. Ry. Co. v. Myers*, 57 Ind. App. 458, 105 N. E. 645, 107 N. E. 296.

■ Among the facts which the trial court states in its memorandum decision must be taken to be established by the evidence, or by necessary implication therefrom, are that soon after appellant's predecessor began dredging the mining ground it discovered the presence of oil on the water, and continued dredging operations long after such discovery was made, and that the source of the oil was as readily discoverable at the outset of the dredging as at any time afterward. The trial court concluded appellant had no right to claim any but continuing damages for delay in its mining operations; that not having delayed but, by dredging, destroyed its property so that abatement by respondent would not aid it, it destroyed the only right of action it had, and a verdict for respondent should have been directed.

There is evidence which will justify the conclusion that now, since the ground has been dredged and the sand, gravel and gold have been mixed with grease and oil, the gold cannot be recovered even if the grease and oil finally disappear from the watershed. However, the trial court was not justified in the conclusion that the source of the oil and grease was readily discoverable at the time dredging commenced. The evidence is against that idea. There is much testimony of efforts made to overcome the effect of the grease and oil that appeared in the gold catching equipment; also that the source of the trouble was not discovered until a large part of the ground had been dredged.

■ Respondent was not prejudiced by the dredging of the mining ground after its injury by grease and oil. Its interests were safeguarded against danger in this particular by instruction No. 9.

■ The property having been depreciated in value by the presence of grease and oil, so that the saving of gold

in process of mining would be seriously interfered with for an indefinite length of time, the fact that appellant continued its mining operations after the discovery of the source of the trouble does not furnish respondent an avenue of escape from the consequences of damage wrought by the nuisance for which it was responsible, and the direction of a verdict in its favor would have been error.

Respondent insists that an order granting a new trial will not be reversed if it can be justified on any ground upon which the motion was made. In this connection we approve the following rule announced by the supreme court of Missouri:

"In the appeal from such an order the burden is upon the appellant to show that the ground upon which the court put the order does not support it; and as to the other grounds of the motion, the presumption will be indulged that the court's ruling was right until the respondent shows the contrary. The effect of the order was to overrule all other grounds except that therein specified." (*Arkla Lumber & Mfg. Co. v. Henry Quellmalz Lumber & Mfg. Co.*, (Mo.) 252 S. W. 961, at 967.)

Grounds, other than those on which the motion was sustained, were included in respondent's notice of intention to move for a new trial. Among these is that the complaint and evidence show the cause of action is barred by the statutes of limitation pleaded in the answer. These are subds. 2 and 3 of sec. 5–218 and sec. 5–224, Idaho Code Annotated.

Section 5–218 is our three-year statute of limitations. Subd. 2 thereof refers to actions for trespass upon real property, and subd. 3 refers to actions for taking, detaining or injuring any goods or chattels, including actions for the specific recovery of personal property. This section does not apply to the cause of action here under consideration.

Section 5–224 is our four-year statute and relates to actions for relief not otherwise provided for in the chapter on limitations of actions. It is the section appli-

cable to this case. (*Boise Development Co., Ltd., v. Boise City,* 30 Ida. 675, 167 Pac. 1032.) The action was commenced within the four-year period.

In the notice of intention to move for a new trial there are specified certain grounds which we have not discussed, but we have given them consideration and find no error in the record prejudicial to respondent.

The order granting a new trial is reversed and the trial court is directed to reinstate the judgment. Costs are awarded to appellant.

Givens and Holden, JJ., and Rice and Babcock, D. JJ., concur.

Petition for rehearing denied.