788 P.2d 188

**Richard H. HEITZ, as surviving spouse and Personal Representative of the Estate of Mary Jane Heitz, deceased; Richard H. Heitz, Jr., Russel Todd Heitz and Robin Irene Heitz, children and heirs of deceased, Plaintiff-respondents,**

v.

**E.G. CARROLL, M.D., and Mrs. E.G. Carroll, husband and wife, Defendant-appellants.**

No. 17355.

Supreme Court of Idaho.

Feb. 27, 1990.

---

Quane, Smith, Howard & Hull, Boise, for appellants. Kathryn A. Sticklen argued.

Smith & Peart, Fruitland, and Richter–Wimberley, Spokane, Wash., for respondents. F.G. Fancher argued.

BAKES, Chief Justice.

Plaintiffs/respondents sued defendants/appellants to recover for medical malpractice and for the wrongful death of Mary Heitz. The case was tried, and the jury rendered a verdict for defendants. Plaintiffs then moved for a j.n.o.v. or, in the alternative, for a new trial. The j.n.o.v. motion was denied, but the new trial mo-tion was granted. Defendants appeal the grant of a new trial, alleging, *inter alia*, that the trial court's post-verdict rulings regarding the special verdict form were legally erroneous. We reverse and remand for further proceedings.

I

Mary Heitz had been a patient of Dr. Eugene Carroll since 1965. On June 3, 1981, Mary went to Dr. Carroll for a physical examination and pap smear. At that time, upon a routine urinalysis, a microscopic trace of blood was discovered which Dr. Carroll attributed to menstrual bleeding. Almost a year later, on April 19, 1982, Mary returned with complaints of lower abdominal pain. A second urinalysis showed microscopic moderate blood in the urine, and Dr. Carroll diagnosed it as diverticulitis.

Almost fifteen more months passed and on July 7, 1983, Mary went to Dr. Carroll's office with complaints of burning on urination for two days. Her urinalysis again showed microscopic blood, as well as white blood cells. Dr. Carroll diagnosed a urinary tract infection and treated Mary with antibiotics. He also, by routine practice, would have advised Mary to return upon completion of the medication, but his notes do not indicate that he did. Mary did not return, but instead appeared on August 5, 1983, for an unrelated reason and did not mention any urinary complaints.

The next time Mary complained of urinary symptoms was March 8, 1984. An antibiotic was again prescribed. She returned on March 30, and again on April 23, 1984, for an unrelated reason, but expressed no urinary complaints. Then, on April 26, 1984, she returned with complaints of urination frequency and burning upon urination. A microscopic evaluation revealed a few red blood cells and numerous white blood cells. An antibiotic was again prescribed.

On July 19, 1984, Mary returned complaining of urinary tract symptoms over the summer. At that time there was less microscopic blood in the urine than had

been present in April, but many white blood cells were still present. An antibiotic was again prescribed. Mary came back on August 1, 1984, with continuing urinary complaints and was placed on a different antibiotic for one week. Mary, however, did not return for a follow-up.

On October 11, 1984, Mary went to the emergency room at Holy Rosary Hospital in Ontario, Oregon, with visible blood in her urine. The doctor there did an exam, performed some tests, gave her an antibiotic and a pain killer, and instructed her to follow up with Dr. Carroll. Instead of returning to Dr. Carroll, Mary consulted Dr. Bockenstette, a urologist in Nampa, Idaho, on October 16, 1984. Dr. Bockenstette treated her for a urinary infection by prescribing antibiotics and asked her to return for a follow-up visit.

On October 18, 1984, Mary went back to Dr. Carroll complaining of pain in her right arm above the elbow. Dr. Carroll's records make no note of any urinary tract problem. Dr. Carroll does not remember whether he inquired as to the hospitalization, though he was aware of it because the hospital had reported Mary's visit to him earlier.

Mary returned to Dr. Bockenstette when the urinary tract problem did not resolve itself, and Dr. Bockenstette performed X-rays of Mary's bladder (IVP's) on November 6, 1984, and discovered a tumor. Subsequently, a cystoscopy and biopsy was performed and the tumor was diagnosed as bladder cancer. There was also evidence of spread, or metastasis, to the bone in the right arm, causing the pain for which Mary had seen Dr. Carroll earlier.

After consultation with Dr. Donald Skinner, professor of surgery and chairman of the Division of Urology at the U.S.C. School of Medicine, a treatment program was set up. It consisted of (1) a series of chemotherapy and radiation treatments, and (2) surgery in May, 1985, to remove the anterior pelvic organs, including the bladder, the urethra portion of the vagina, the right kidney and ureter, and the lymph nodes. In addition, an artificial bladder was constructed from part of Mary's intestine.

In the fall of 1985, Mary developed headaches and was diagnosed as having a brain tumor. There was expert testimony that the tumor was a metastasis from the bladder cancer. She had surgery to remove the tumor and subsequently underwent radiation therapy until January 21, 1986.

Mary died 28 days later. Following Mary's death, an autopsy was performed by Dr. Donndelinger. The autopsy indicated that the cause of death was a large blood clot that plugged the arteries from the right side of the heart to the lungs.

Plaintiffs brought this action to recover for the wrongful death of Mary Heitz, allegedly caused by Dr. Carroll's negligence. At trial Dr. Donndelinger testified that Mary's blood clots were due to her inactivity occasioned by the treatment of her brain tumor. Both Dr. Donndelinger and Dr. Skinner testified that in their opinion Mary's death was a result of complications arising out of her bladder cancer. The defendants presented no witnesses to testify on the cause of death, although through cross examination, they established that Mary's obesity may have been a factor.

The case was submitted to the jury on interrogatories contained in a special verdict form. At issue here is the first question on the special verdict form which reads:

QUESTION NO. 1: Was there negligence, as a health care provider, on the part of the defendant E.G. Carroll, M.D., which was a proximate cause of the death of Mary Heitz?

Answer: YES ___ NO ___

After some deliberation, the jury submitted the following written question to the trial judge:

Your Honor!
Can you clarify Question No. 1 as to whether Dr. Carroll can be negligent without being responsible for her death?

A.J. Hendricks
Foreman

The district judge, Hon. Wayne P. Fuller, answered the question as follows:

Question No. 1 requires you to decide two things:

1. Was there negligence, as a health care provider, on the part of Dr. Carroll,

2. Which was a proximate cause of the death of Mary Heitz.

Please review the applicable instructions and make your decision in accord with your factual findings.

November 18, 1987
5:50 p.m.
Wayne P. Fuller
District Judge

Within a short period of time the jury returned its special verdict, in which only three jurors answered "yes," and nine jurors answered "no," to Question No. 1 of the Special Verdict Form. Accordingly, the trial judge entered judgment in favor of the defendants.

Five days later, plaintiffs moved for a judgment notwithstanding the verdict and, in the alternative, for a new trial. A hearing was held on the motions. The court found, based upon an analysis of all the evidence presented, that there was substantial evidence upon which the jury could have found in favor of the defendants as it did. Accordingly, the motion for j.n.o.v. was denied. The court, however, took under advisement the alternative motion for a new trial. Defendants' counsel then lodged a memorandum in opposition to granting a new trial. Plaintiffs did not submit any additional written arguments. The district judge ultimately filed a memorandum decision and order granting plaintiffs' motion for a new trial because, *inter alia,* he found that the verdict was against the clear weight of the evidence, and, alternatively, "[t]he special verdict form was erroneous in that it did not permit the jury to consider awarding damages to the Plaintiffs for the medical expenses incurred prior to death caused by the spread of the cancer; these medical expenses would be recoverable without finding a proximate cause between any negligence and the death of MH [Mary Heitz]." Defendants/appellants now appeal from the trial court's order granting a new trial.

1. The trial judge denominated this as an "alternative" reason. However, on the record it appears that this reason permeated the trial

## II

Appellant raises several issues regarding the propriety of the trial judge's ruling on the plaintiff-respondent's motion for new trial. Appellant alleges that the trial court made an error in law when it concluded, in the post trial proceedings, that the interrogatories in the special verdict form, "did not permit the jury to consider awarding damages to the Plaintiffs for the medical expenses incurred prior to death," irrespective of the jury's finding that there was no negligence on the part of the defendant, Dr. Carroll, which was a proximate cause of the death of the plaintiff Mary Heitz. The trial court *sua sponte* concluded that the jury had been improperly instructed, and that conclusion figured into the trial court's analysis in granting the new trial.[1] However, we conclude that the trial court erred in its conclusion that the interrogatories in the special verdict were grounds for granting a new trial.

This Court has long recognized that "the parties to an action are bound by the theory on which they try it." *Idaho Gold Dredging Corp. v. Boise Payette Lumber Co.,* 52 Idaho 766, 776, 22 P.2d 147, 150 (1933); *Aetna Casualty & Surety Co. v. Wedgwood,* 57 Idaho 682, 687, 69 P.2d 128, 129 (1937). In this case both parties submitted the case to the jury with requested instructions and proposed special verdict interrogatories which advised the jury that in order for the plaintiffs to recover it was necessary for them to prove that the negligence of Dr. Carroll was "a proximate cause of the *death* of Mary Jane Heitz." (Emphasis added.) Plaintiffs' requested special verdict form included the further direction that "[i]f you answered the above question 'No,' then simply sign the verdict form and inform the bailiff that you are done."

The case was tried as a wrongful death action though it had not always been prosecuted that way. Plaintiff Mary Heitz first filed her complaint on January 20, 1986, as

judge's reasoning throughout the entire new trial proceeding, thus erroneously influencing his order granting the new trial.

a medical malpractice action. A month later she passed away. An amended complaint was then filed by her husband for himself, and as personal representative of Mary's estate, adding a cause of action for wrongful death, and eliminating Mary's claim for pain and suffering.

Plaintiff's first set of requested instructions, submitted to the trial court on October 26, 1987, included a special verdict form which did not request the jury to make a finding regarding wrongful death, but did request it to determine whether Dr. Carroll was negligent in his diagnosis and, if so, whether that negligent diagnosis was a proximate cause of the delayed diagnosis of Mary's cancer. The special verdict also submitted the question of Mary's contributory negligence to the jury.

Thereafter, on November 2, 1987, plaintiffs submitted a new proposed special verdict form which substantially changed the issue plaintiffs wanted submitted to the jury. That special verdict form, in Question No. 1, asked the jury whether the defendant, Dr. Carroll, was negligent, and whether that negligence was "a proximate cause of the death of Mary Jane Heitz?" The jury was told, as part of Question No. 1, that "[i]f you answered the above question 'No,' then simply sign the verdict form and inform the bailiff that you are done." The defendants requested a similar special verdict form, containing a special interrogatory paralleling that requested by plaintiffs.

At the end of the trial, at the instruction conference, the court reviewed with the attorneys the court's proposed instructions to be submitted to the jury. As part of that process, the court and the attorneys reviewed Instruction 23, which informed the jury regarding each of the elements plaintiffs needed to prove in order to recover. One of those elements was that "the negligence of the defendant was a proximate cause of the death of Mary Heitz." The jury was then told, "[i]f you find, from the evidence presented, that the plaintiffs have proven each of the foregoing propositions by a preponderance of the evidence, you will answer the special verdict form in accord with those findings. If, however, the plaintiffs have failed to prove one or more of these propositions, you will answer the special verdict form in accord with those findings." The record reflects that Instruction 23, which followed plaintiff's second proposed special verdict form, was not objected to by the parties.

Again, in Instruction 25, the court instructed the jury that "the Plaintiffs have the burden of proving that the [Defendants'] failure to meet the applicable standard of practice *was a proximate cause of the death of Mary Jane Heitz* and damage to the Plaintiffs, and the amount thereof." (Emphasis added.) Plaintiffs did object to Instruction 25, but their objection was only that it repeated the instructions contained in No. 23, and therefore it placed undue emphasis on plaintiffs' burden.[2] However, both Instruction 23 and Instruction 25 were given by the court.

The special verdict form submitted to the jury by the trial court followed the language contained in the special verdict form requested by both the plaintiffs and the defendants, and asked, in Question No. 1, "Was there negligence, as a health care provider, on the part of the defendant E.G. Carroll, M.D., *which was a proximate cause of the death of Mary Heitz?*" (Emphasis added.) Nine jurors answered the question "no," and three jurors answered "yes." The jury was then advised that "[i]f you answered 'No' to Question No. 1,

---

**2.** At the instruction conference plaintiffs' attorney stated:

Specifically I am objecting as far as Instruction 25 as to the last paragraph, in which it says, "In addition, the Plaintiffs have the burden of proving that the failure to meet the applicable standard of practice was a proximate cause of the death of Mary Jane Heitz and damage to the Plaintiffs, and the amount thereof."

I feel that is repetitious, and that under Instruction 23 the Court has already instructed the jury that we have the burden of proving the following propositions, and basically the propositions that are listed in [Instruction] 23 are the same that are listed in [Instruction] 25, so I feel that it's an undue emphasis, if you will, on our burden of proof; and I would request the Court delete that part of Instruction No. 25.

that you will simply sign the verdict form and inform the bailiff that you are done," which the jury did.

In ruling upon the plaintiffs' motion for new trial, the trial court concluded, apparently *sua sponte*, that the plaintiff Mr. Heitz could have had a claim for medical expenses irrespective of whether Dr. Carroll's alleged negligence was a proximate cause of the death of Mary Heitz. For that reason, and for the additional reason that the trial court thought the verdict was against the clear weight of the evidence, the trial court granted the plaintiffs' motion for new trial.

In order to grant a new trial on the ground of "[i]nsufficiency of the evidence to justify the verdict or other decision, or that it is against the law," I.R.C.P. 59(a)(6), the trial court must determine both (1) the jury verdict is against the clear weight of the evidence, and (2) a new trial would produce a different result. *Blaine v. Byers*, 91 Idaho 665, 671, 429 P.2d 397, 403 (1967) ("[T]he general rule which prevails in this jurisdiction is that a motion for a new trial should not be granted unless it appears that a different result would follow a retrial."). Regarding the second part of the Rule 59(a)(6) test, *i.e.*, that a new trial would produce a different result, the trial court's conclusion that it would was based upon his conclusion "that Plaintiffs will probably recover at least the medical expenses incurred prior to death caused by the spread of cancer." That conclusion was based upon the trial court's finding that the special verdict form submitted to the jury was itself erroneous because "it did not permit the jury to consider awarding damages to the Plaintiffs for the medical expenses incurred prior to death caused by the spread of cancer," irrespective of whether the doctor's alleged negligence was a proximate cause of Mary Heitz's death. However, plaintiffs elected to try this case solely as a wrongful death case, and submitted instructions and a special verdict form, which were joined by the defendant, and given by the trial court, which required the jury, before it could award damages to the plaintiff, to find negligence on the part of Dr. Carroll which

was a proximate cause *of the death of Mary Heitz.* Plaintiffs, the husband and surviving children of Mary Heitz, chose to pursue this case as a wrongful death claim, rather than a claim by the estate of Mary Heitz for medical expenses. They chose to submit the case that way on requested instructions which required the jury to find that the death of Mary Heitz was proximately caused by the negligence of Dr. Carroll before the jury could award damages in the case.

The trial court's finding that a retrial would produce a different result in this case was based upon his erroneous conclusion that the special verdict form "did not permit the jury to consider awarding damages to the Plaintiffs for medical expenses incurred prior to death caused by the spread of cancer." Where a plaintiff has chosen to submit his case upon certain issues or theories, they are bound by those choices, and it is error for the trial court to afterward grant one party a new trial on the basis that the plaintiff might have prevailed had it raised a different issue. *M.K. Transport, Inc. v. Grover*, 101 Idaho 345, 349, 612 P.2d 1192, 1196 (1980) ("Where nothing in the record indicates that an unpleaded issue was litigated at trial, it is error for the trial court to base its decision on the unpleaded issue."). Plaintiff elected to proceed solely as a wrongful death action, and submitted a special verdict form which required the jury to find that the negligence of Dr. Carroll was a proximate cause of the death of Mary Heitz in order for the plaintiffs to recover any damages. "[O]ur cases clearly reject the notion that one may assert as error the trial court's instructing in language which that person has specifically requested the court to give, regardless of whether it was a correct statement of the law." *McBride v. Ford Motor Co.*, 105 Idaho 753, 762, 673 P.2d 55, 64 (1983). The trial court, in ruling on the motion for new trial, erred in concluding that the special verdict form should have included other legal theories than those which the parties chose to submit to the jury.

In *Sanchez v. Galey,* 112 Idaho 609, 733 P.2d 1234 (1987), this Court reversed the trial court's grant of an alternative motion for new trial where the trial court was operating in part under an erroneous legal standard in granting the new trial. In *Sanchez* we stated, "[W]e cannot ascertain whether the trial court was either shocked by the jury's award, or whether it found that award unconscionable." 112 Idaho at 616, 733 P.2d at 1241. In this case "we cannot ascertain whether the trial court" concluded that a different result would occur on retrial of the wrongful death claim, or whether a retrial on different issues would result in a recovery on those new issues. In *Sanchez* we reversed and remanded the case to the trial court to reconsider the alternative motion for new trial under the proper legal standard. Likewise, in this case the trial court granted the plaintiffs' motion for new trial, in part, on an issue which the plaintiffs, whether intentionally or by oversight, chose not to submit to the jury. Since the plaintiffs were bound by the issues upon which they tried their case, *Aetna Casualty & Surety Co. v. Wedgwood,* 57 Idaho 682, 69 P.2d 128 (1937); *Idaho Gold Dredging Corp. v. Boise Payette Lumber Co.,* 52 Idaho 766, 22 P.2d 147 (1933), the trial court erred when it considered other issues not raised by the litigants, in granting the motion for new trial.

The trial court's order granting plaintiffs' motion for new trial is reversed. The case is remanded to the trial court to rule again on the motion for new trial without considering the fact that the court's special verdict form did not submit to the jury the question of whether damages in the form of medical expenses could have been found by the jury irrespective of whether the jury found negligence on the part of Dr. Carroll which was a proximate cause of the death of Mary Heitz.

Reversed and remanded. Costs to appellants, no attorney fees on appeal.

BISTLINE, JOHNSON, BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, specially concurring.

## PART I.

I have concurred in the opinion of Chief Justice Bakes, primarily because of my confidence that the district judge will arrive at the correct response to this Court's direction to rule again on the motion for new trial by excluding that matter which Justice Bakes has delineated in the final paragraph of the Court's opinion. Nevertheless I feel compelled to state that the Court could be heading this case in a more direct route.

Assuming that the district court reasons anew as directed, and continues to believe that there should be, and accordingly grants, a new trial, that order will be just as appealable as the order which the Court today has now reversed. It would seem that interminable delays are a bane to the administration of justice, and many are the cases which have so observed. If commanding a majority, my preference would be that we allow the order awarding a new trial to stand; otherwise put, that we affirm. Were that to be our chosen course, both the plaintiffs and Dr. Carroll would benefit by not having this controversy drag on. A trial can readily be had. If, as might seem indicated by the results of the first trial, the doctor again gets the jury's nod, it is highly likely that the controversy will be put to rest, assuming that respective counsel are careful to avoid interjecting prejudicial error during the trial proceedings.

Moreover, there is additional good reason for proceeding as I suggest. The Court has in recent years wrestled with a number of appellate cases wherein we reviewed grants or denials of motions for a new trial. Much law has been written, but seldom have all members of the Court agreed as to exactly what the law is. This has been recently brought rather forcibly to our attention by an opinion thirty-one pages in length written by an eminent district judge of the First Judicial District. On any view of the facts of the case before us, my view of the state of the law in Idaho

is such that our opinion today could very well be written to uphold the district court's grant of a new trial. Briefly I will demonstrate, and in doing so will accept the facts as stated by the Chief Justice, and apply to those facts the case law with which the Court has been heavily concerned.

## PART II.

Multiple issues are raised on appeal. Each will be discussed in turn.

## CONSTITUTIONAL VIOLATIONS

Appellants first assert that I.R.C.P. 59(a)(6), as presently interpreted and applied, violates their constitutional right to a jury trial. In pertinent part, I.R.C.P. 59(a) reads as follows:

> **Rule 59(a). New trial—Amendment of judgment—Grounds.**—A new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons:
> ....
> 6. Insufficiency of the evidence to justify the verdict or other decision, or that it is against the law.
> 7. ... Any motion based on subdivisions 6 or 7 must set forth the factual grounds therefor with particularity....

It has already been decided that I.R.C.P. 59(a)(6) does not violate the constitutional right to a jury trial. Concerning the jury trial right under the United States Constitution, "it is well settled that the Seventh Amendment does not apply to the states in so far as the right to a jury trial in civil cases is concerned." *Sheets v. Agro–West, Inc.*, 104 Idaho 880, 884, 664 P.2d 787, 791 (Ct.App.1983). And regarding the right to a jury trial under our state Constitution, in *Quick v. Crane*, 111 Idaho 759, 766, 727 P.2d 1187, 1195 (1986), we stated that the trial judge's "authority to set aside the verdict on a new trial motion is supported by clear precedent at common law. Indeed, far from being a denigration or usurpation of the right to a trial by jury, trial judges have always been an integral part of that right." As further explained in

*Sheets v. Agro–West, Inc.*, 104 Idaho at 884, 664 P.2d at 791:

> The constitutional right of trial by jury has been interpreted to secure that right as it existed at common law when the Idaho Constitution was adopted. [Citations omitted.] Before Idaho became a state, our territorial Supreme Court had recognized the trial court's discretionary function in ruling upon new trial motions.... Thus the constitutional right to trial by jury in civil cases, under the state constitution, is subject to the trial court's discretionary power to grant a new trial.

I.R.C.P. 59(a)(6) does not violate the constitutional right to a jury trial under either the United States Constitution or the Idaho Constitution.

## NEW TRIAL STANDARD

At the hearing before this Court appellants also argued that the standard now employed in ruling on directed verdicts and j.n.o.v.'s, *i.e.*, whether there is substantial competent evidence to sustain the jury's verdict, *Stephens v. Stearns*, 106 Idaho 249, 678 P.2d 41 (1984), should also apply to analyzing motions for a new trial. That argument is without merit. "[T]he two motions have wholly distinct functions and different standards govern their allowance." *Quick v. Crane*, 111 Idaho at 766, 727 P.2d at 1194. As succinctly stated in *Blaine v. Byers*, 91 Idaho 665, 671, 429 P.2d 397, 403 (1967), I.R.C.P. 59(a)(6) permits a new trial when the trial court

> is satisfied the verdict is not supported by, or is contrary to, the evidence, or is convinced the verdict is not in accord with the clear weight of the evidence and that the ends of justice would be subserved by vacating it, or when the verdict is not in accord with either law or justice.

This standard has recently been affirmed in *Hinman v. Morrison–Knudsen Co., Inc.,* 115 Idaho 869, 771 P.2d 533 (1989), and we have been presented with no compelling reasons to deviate from it.

## NEW TRIAL

Appellants' major contention is that under the present interpretation of I.R.C.P. 59(a)(6) the district judge abused his discretion in granting a new trial. I disagree. The resolution of this issue is governed by our recent unanimous opinion in *Hinman.* The principal issue presented in *Hinman* was whether the trial court erred in granting plaintiff's motion for a new trial after special jury verdicts had been returned in favor of the defendants. After the *Hinman* jury had returned its verdicts, plaintiff Hinman filed a motion for j.n.o.v. or, in the alternative, for a new trial, asserting, pursuant to I.R.C.P. 59(a)(6), that the evidence presented was insufficient to support the jury's verdict. The trial judge granted Hinman's motion for a new trial, basing his decision in part on I.R.C.P. 59(a)(6) and *Blaine v. Byers,* 91 Idaho 665, 429 P.2d 397 (1967).

In affirming the grant of a new trial in *Hinman,* this Court first noted that, as stated in *Blaine,* I.R.C.P. 59(a)(6) permits a new trial when the trial court

> is satisfied the verdict is not supported by, or is contrary to, the evidence, *or* is convinced the verdict is not in accord with the clear weight of the evidence and that the ends of justice would be subserved by vacating it, or when the verdict is not in accord with either law or justice. (Emphasis added.)

*Hinman,* 115 Idaho at 870, 771 P.2d at 534, quoting *Blaine v. Byers,* 91 Idaho at 671, 429 P.2d at 403. We then stated that "[t]his Court has held that a trial court has broad discretion as to a motion for a new trial, and that discretion will be upheld unless the trial court has manifestly abused its discretion." *Id.* (citations omitted). In *Hinman* we held that the grant of the new trial should be affirmed where the record provided no basis for a conclusion that the trial judge manifestly abused his discretion.

The same analysis should apply in the instant situation. The trial judge here set forth the basis for granting plaintiffs' motion for a new trial. After a thorough review of all the evidence, the trial court found:

1. The clear weight of the evidence shows: EGC [Eugene G. Carroll] failed to use a differential diagnosis in treating MH [Mary Heitz] for her bladder infections in the spring and summer of 1984. EGC failed to do follow-up tests or to refer MH to a specialist when this bladder infection continued; the applicable community standard of care was breached by these failures; such failures directly resulted in a delayed diagnosis of bladder cancer and to the spread of the cancer to other parts of the body of MH, including her shoulder and brain; such failures were a substantial factor in the death of MH in February, 1986; that MH died while at home recovering from cancer treatments on her brain when a large blood clot from her legs passed through her heart and into her lungs; that the risk of death from complications proximately caused by spread of the bladder cancer was foreseeable although the manner in which it occurred may not have been; that but for the spread of the cancer to the brain of MH, she would be alive at time of trial.

2. The clear weight of the evidence further shows: prior to her death, MH incurred medical expenses proximately caused by the spread of the bladder cancer and not caused by the cancer itself. This Court concludes the verdict was against the clear weight of the evidence.

. . . .

This Court further finds: that the clear evidence at the trial showed a proximate cause between any alleged negligence of EGC and the death of MH; it is likely a new trial would lead to a different result; that Plaintiffs will probably recover at least the medical expenses incurred prior to death caused by the spread of the cancer.

R. 256–258.

With the above quoted statements in his memorandum decision and order, the trial judge adequately set forth the basis for his ruling granting the motion for a new trial and, on this record, there is no basis for

**382**

ruling that the trial judge manifestly abused his discretion. The trial judge was convinced that "the verdict [was] not in accord with the clear weight of the evidence and that the ends of justice would be subserved by vacating it...." *Blaine v. Byers*, 91 Idaho at 671, 429 P.2d at 403. Accordingly, the trial judge's grant of a new trial under I.R.C.P. 59(a)(6) should be affirmed. *Accord Tibbs v. City of Sandpoint*, 100 Idaho 667, 603 P.2d 1001 (1979) (the trial court did not abuse its discretion in granting plaintiffs' motion for new trial on ground that verdict rendered in favor of defendants was against the weight of evidence and against the law).

I trust that the trial court's reasoning on remand will continue to reflect the same thoughtfulness demonstrated by its prior decision granting a new trial. For that reason I concur with the result reached by the majority.