664 P.2d 787

David G. **SHEETS** and Carolyn Sheets, husband and wife, Plaintiffs-Respondents,

v.

**AGRO–WEST, INC.,** an Idaho corporation; Layton Noe, Defendants-Appellants.

No. 14382.

Court of Appeals of Idaho.

June 7, 1983.

Robert M. Tyler, Jr., Elam, Burke, Evans, Boyd & Koontz, Boise, for defendants-appellants.

William F. Gigray, III, Gigray, Miller, Downen & Weston, Caldwell, for plaintiffs-respondents.

WALTERS, Chief Judge.

Defendants Agro-West, Inc. and its employee Layton Noe (hereinafter "Agro-West") appeal from an order granting a new trial to plaintiffs David and Carolyn Sheets (hereinafter "Sheets") to redetermine the comparative negligence of the parties and the amount of damages for personal injury. Agro-West argues that we should alter the standard of review for new trial motions; that the broad trial court's discretion to order a new trial—subject only to review for manifest abuse of discretion—violates the right to jury trial guaranteed by our state and federal constitutions; and that, in any event, the trial court abused its discretion in granting a new trial. We reject these arguments and affirm the order of the trial court granting a new trial.

Agro-West is a commercial distributor of farm chemicals. On June 22, 1978, a chemical spill occurred at Agro-West's facility near Wilder, Idaho. The chemical spilled was Terr-o-cide 30-D. In response to a request from Layton Noe, manager of Agro-West, Idaho Concrete and Pipe Company dispatched its employee, David Sheets, to deliver a load of road mix—a mixture of sand, gravel and dirt—to be spread on the spill. While spreading the mix, Sheets drove his truck through the spill and immediately began experiencing physical reactions from exposure to the fumes of the chemical. His eyes watered, he began coughing and had difficulty breathing. He was able to stop his truck and escape the fumes before passing out. Since that time, he has complained of, and has been treated for, a number of physical ailments and discomforts allegedly caused by the incident.

Sheets and his wife brought suit in negligence for damages against Agro-West and Noe. By special verdict, the jury found Sheets eighty-seven percent negligent, found Agro-West and Noe thirteen percent negligent, and made an award of damages to Sheets. Because a plaintiff suing for negligence in Idaho cannot recover damages where his negligence equals or exceeds that of the defendant, I.C. § 6–801, the jury's assessment of negligence precluded recovery of damages by Sheets.

Sheets moved for a new trial. The court granted Sheets' motion, citing I.R.C.P. 59(a)(5) and 59(a)(6). Under Rule 59(a)(5), a new trial may be granted because of excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice. Under Rule 59(a)(6), a new trial may be granted because of the

insufficiency of the evidence to justify the verdict or other decision, or that it is against the law.

We will first consider Agro-West's contention that a new standard should be applied to review a trial court's grant of a new trial. The present standard of review is that "the determination of a new trial motion is largely within the discretion of the trial court and [the appellate court] will not overrule the grant or denial of the motion absent a manifest abuse of discretion." *Rowett v. Kelly Canyon Ski Hill, Inc.*, 102 Idaho 708, 709, 639 P.2d 6, 7 (1981). This standard has, as its foundation, the premise that the trial judge has had the opportunity to observe the parties, witnesses, and counsel during the trial and can better judge whether a fair trial was had and substantial justice was done. *Rowett, supra,* 102 Idaho at 710, 639 P.2d at 8.

The standard which Agro-West urges upon us is the "substantial evidence" standard which our Supreme Court has applied to motions for judgment n.o.v. "[A] motion for judgment n.o.v. should not be granted when there is substantial competent evidence to support the verdict of the jury." *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 735, 518 P.2d 1194, 1197 (1974). Agro-West bases its argument for a different standard on the increase in time, monetary expense, and uncertainty which results from the grant of a second trial. It argues that the substantial rights of the prevailing litigants are ignored and fundamental unfairness results when a new trial is ordered. Agro-West cites *Lind v. Schenley Industries, Inc.*, 278 F.2d 79 (3rd Cir.1960), *cert. denied,* 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960), as authority for the proposition that "closer appellate scrutiny" is required where a new trial is granted on the basis that a jury's verdict is against the weight of the evidence. The implication is that closer appellate scrutiny means a higher standard to be applied in reviewing a grant of a new trial motion.

However, we note that in *Mann* the Idaho Supreme Court explicitly considered and rejected the application of the "substantial evidence" standard to new trial motions. In *Mann,* the court reaffirmed its support for the rule permitting the trial court to exercise its discretion in deciding new trial motions. 95 Idaho at 736, 518 P.2d at 1198; *see also Dinneen v. Finch,* 100 Idaho 620, 626, 603 P.2d 575, 581 (1979).

A motion for new trial serves a function entirely distinct from a motion for judgment n.o.v. C. Wright & A. Miller, Federal Practice and Procedure, Civil § 2531. A judgment n.o.v. is recognized as "a delayed motion for directed verdict." *Mann,* 95 Idaho at 736, 518 P.2d at 1198. A directed verdict should be granted only when the evidence is so clear and undisputed that all reasonable minds must reach the same conclusion. *Shields & Co., Inc. v. Green,* 100 Idaho 879, 606 P.2d 983 (1980); *Lombard v. Cory,* 95 Idaho 868, 522 P.2d 581 (1974). A directed verdict or judgment n.o.v. is grounded on the principle that, while issues of fact are for the jury to decide, whether the evidence is sufficient to create an issue of fact is a question of law for the court. Wright & Miller, *supra,* Civil § 2524.

A motion for new trial, if granted, does not result in an adjudication of factual issues by the court. Neither does it represent a determination that, as a matter of law, the evidence failed to establish an issue of fact. It is the court's statement that it believes the jury erred in its findings or in the application of law as contained in the court's instructions, and that the issues should be submitted to another jury for redetermination. Because a jury will still determine the factual issues, the standard for granting a new trial is much less rigorous than that applied to motions for directed verdict or judgment n.o.v. Wright & Miller, *supra,* Civil § 2531. A motion for new trial should be granted if the court believes that the jury verdict "is not in accord with law or justice." *Seppi v. Betty,* 99 Idaho 186, 189, 579 P.2d 683, 686 (1978), quoting *Warren v. Eshelman,* 88 Idaho 496, 500, 401 P.2d 539, 541 (1965). Implicit in this statement is the recognition that where reasonable minds could disagree, but the

trial court believes the jury verdict is in error, the benefit of arriving at a legally correct and just resolution of a dispute through a new trial outweighs the disadvantage of uncertainty, time and expense incident to continued litigation.

■ We conclude that the "substantial evidence" standard is not appropriate for new trial motions. To adopt such a standard would, in effect, eliminate new trial motions, and leave a trial court with a choice between granting a judgment n.o.v. or acquiescing in what the court believes to be a flawed verdict. We do not believe that a trial court should be limited in this fashion.

Agro-West correctly cites *Lind, supra,* for the proposition that "closer appellate scrutiny" is required when a new trial is granted because a verdict is against the weight of the evidence. Agro-West argues that this "scrutiny" can best be made where the trial court is required to specifically articulate its reasons for granting a new trial. Although this argument has considerable merit, it does not follow that "closer appellate scrutiny" requires a higher standard to be met on review. We believe that an appropriate review of an exercise of discretion, whether concerning new trial motions or other motions in which a court may exercise discretion, requires only that we review the circumstances of the case and the grounds upon which the trial court based its decision, to ascertain that the trial court did not abuse its discretion. To facilitate a meaningful review of the court's exercise of discretion on a new trial motion, the court should state on the record the reasons which it believes support a new trial, as well as the grounds, provided by rule or statute, on which the court bases its order for a new trial. *See* Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above,* 22 Syracuse L.Rev. 635 (1971). However, our Supreme Court has adhered to the position that, where the trial court grants a new trial, failure to state why the court felt the evidence was insufficient to support the verdict does not constitute reversible error. *Luther v. Howland,* 101 Ida-

ho 373, 375, 613 P.2d 666, 668 (1980). We are constrained to abide by this view.

■ Agro-West next argues that the "manifest abuse of discretion" standard violates Article I, section 7 of the Idaho Constitution, which provides that "[t]he right of trial by jury shall remain inviolate," and the Seventh Amendment to the United States Constitution, which provides that "the right of trial by jury shall be preserved...." However, it is well settled that the Seventh Amendment does not apply to the states in so far as the right to a jury trial in civil cases is concerned. *Pearson v. Yewdall,* 95 U.S. 294, 24 L.Ed. 436 (1877); *Walker v. Sauvinet,* 92 U.S. 90, 23 L.Ed. 678 (1875); *see cases cited in* 47 Am. Jur.2d Jury § 9 (1969). As to the alleged violation of the state constitution, we note that the power to grant new trials is not claimed to be unconstitutional; rather it is the wide discretion given to the district court under the "manifest abuse of discretion" standard of review, which Agro-West claims "disturbs" and "infringes" upon the jury's role as factfinders, and allegedly violates the state constitution.

■ The constitutional right of trial by jury has been interpreted to secure that right as it existed at common law when the Idaho Constitution was adopted. *People v. Burnham,* 35 Idaho 522, 207 P. 589 (1922); *Christensen v. Hollingsworth,* 6 Idaho 87, 53 P. 211 (1898). Before Idaho became a state, our territorial Supreme Court had recognized the trial court's discretionary function in ruling upon new trial motions. *Monarch G. & S.M. Co. v. McLaughlin,* 1 Idaho 650, 652 (1877). After statehood, the court later enunciated the "abuse of discretion" standard of review in *Jacksha v. Gilbert,* 4 Idaho 738, 44 P. 555 (1896). Thus the constitutional right to trial by jury in civil cases, under the state constitution, is subject to the trial court's discretionary power to grant a new trial. The limits of this power are defined by the "abuse of discretion" standard of review. Because the discretionary power to grant a new trial does not contravene the state constitution, the abuse of discretion appellate standard is also free from constitutional infirmity.

We turn now to Agro-West's contention that even if the abuse of discretion standard applies here, then the trial court's order granting a new trial should be reversed. Agro-West argues that the jury had been properly instructed as to the apportionment of negligence and comparative negligence, that the evidence supports a finding of eighty-seven percent negligence on the part of Sheets, and that, therefore, it is uncertain that a retrial would have a different result. Agro-West relies upon *Rowett v. Kelly Canyon Ski Hill, Inc.,* 102 Idaho 708, 709, 639 P.2d 6, 7 (1981), where our Supreme Court, citing *Blaine v. Byers,* 91 Idaho 665, 429 P.2d 397 (1967), admonished that "a new trial should not be granted unless it appears that a different result would follow a retrial." The "result" test is the second part of a two pronged analysis which the trial court must make, in deciding whether to grant a motion for new trial. The first part of that test was stated in *Blaine:*

> [T]he discretion with which the trial court is entrusted [to grant or deny a new trial] is a sound legal or judicial discretion, and the trial court may grant a new trial when it is satisfied the verdict is not supported by, or is contrary to, the evidence, or is convinced the verdict is not in accord with the clear weight of the evidence and that the ends of justice would be subserved by vacating it, or when the verdict is not in accord with either law or justice.

91 Idaho at 671, 429 P.2d at 403. The Court in *Blaine* then stated that "[a]dditionally . . . a new trial should not be granted unless it appears that a different result would follow a retrial." *Id.*

Here the trial judge, in granting the new trial, recited that the verdict was against the clear weight of the evidence and that the ends of justice would be served by vacating the verdict on the question of comparative negligence. Implicitly, by granting the motion for new trial, the trial judge believed that there would be a different result on retrial. Upon our view of the record, we conclude that the trial judge's belief was reasonable.

The jury's allocation of causative negligence has questionable support in the record. The record shows that Sheets was aware of the chemical spill. His supervisor cautioned him about it, he smelled the odor of the chemical as he approached the site, he was stopped at a road block that was blocking public access to the spill, and he saw the chemical on the ground. Sheets testified that, when he arrived, Noe told him only to make one pass to spread the road mix on the spill and that when he talked to Noe, his truck was facing the spill. Noe testified that he told Sheets that he had a chemical spill, that he wanted Sheets to dump the road mix parallel to the spill and that a tractor would push the road mix into the spill area. Noe also testified that he told Sheets that the chemical would make his eyes water and would make him cough. However, a report which Noe prepared within four days of the spill, and which supplemented a report filed with the Department of Transportation, included the statement "I told him to . . . try to dump his load over [the] spill or right next to it."

The record also shows that Agro-West and Noe had, or should have had, far greater knowledge than Sheets concerning the potential harmful effects of the chemical involved and the recommended precautions and procedures for clean-up of such spills. Noe and Agro-West were in possession of a material-safety data sheet which contained such information. Potential harmful effects included lacrimation (watering of eyes), bronchitis, vomiting, severe skin irritation, C.N.S. (presumably "central nervous system") depression, and eye and upper respiratory irritation. Cleanup precautions included providing workers with approved respirators for small spills, self-contained air supplies for large spills, protective clothing including goggles or full-face shield, liquid-proof outer clothing, gloves and rubber boots. Sheets did not have access to any of this information and was not provided with any protective accoutrements.

The jury had been instructed that: The precautions taken by a person responsible for a dangerous place or instru-

mentality must be commensurate with the dangers to be apprehended and be sufficient under ordinary circumstances to prevent accident and injury; furthermore, the duty to anticipate injury and take protective action is measured in part by the seriousness of the danger; ...
Persons in charge of property owe to an invitee or business visitor the duty to keep the premises in a reasonably safe condition, or to warn the invitee of hidden or concealed dangers of which the ... one in charge knows or should know by the exercise of reasonable care in order that the invitee be not ... unreasonably exposed to danger;
... it was the duty of the plaintiff David G. Sheets immediately before and at the time of the occurrence to use ordinary care for his own safety.

While the fact of the chemical spill was not hidden or concealed, the risk of harm was not obvious to Sheets and the warning given was not sufficient to discharge Agro-West's duty of care to Sheets. Contributory negligence depends on the plaintiff's appreciation, or opportunity to appreciate, the peril in a condition rather than the physical characteristics of the condition. *Lopez v. Allen,* 96 Idaho 866, 870, 538 P.2d 1170, 1174 (1975). Considering the jury's allocation of negligence, the seriousness of the risk and the disparity of knowledge of the potential harmful effects and recommended precautions, we are not persuaded that the trial court abused its discretion in granting a new trial on the issue of liability and comparative negligence.

Agro-West also argues that the trial court abused its discretion in granting a new trial on the issue of damages. The court ruled that, in answering the special questions on damages, the answers of the jury appeared to have been given under the influence of passion and prejudice and that the amounts determined as damages by the jury were inadequate and were not supported by the evidence.

As with the question of granting a new trial on the issue of liability, the "manifest abuse of discretion" standard applies to our review of the order granting a new trial on the issue of damages. *Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979). Moreover,

[w]here a motion for a new trial is premised on inadequate or excessive damages, the trial court *must* weigh the evidence and then compare the jury's award to what he would have given had there been no jury. If the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice, the verdict ought not stand. It need not be proven that there was in fact passion or prejudice nor is it necessary to point to such in the record. The appearance of such is sufficient. A trial court is not restricted to ruling a verdict inadequate or excessive "as a matter of law." [Citation omitted.] Additionally, the rule that a verdict will not be set aside when supported by substantial but conflicting evidence has no application to a trial court ruling upon a motion for a new trial. [Citations omitted.] (Emphasis in original.)

100 Idaho at 625–26, 603 P.2d at 680–81.

Sheets' evidence of damages may be summarized as follows. After Sheets was exposed to the fumes of the spilled chemical, Terr-o-cide 30-D, and got out of his truck, he was taken to the hospital, examined, and released two days later. Examinations then and later showed only some irritation of Sheets' throat and a slight reduction in his lung capacity. However, since that time, he has suffered from a persistent cough (which was diagnosed as bronchitis), headaches, chest pains, insomnia, breathing difficulties, a loss of sex drive and increased sensitivity to dust, odors, fumes and smoke. His sensitivity was severe enough that he gave up his job with Idaho Concrete and was unsuccessful at several other attempts to work in different situations. In addition, he developed anxiety, high levels of stress, and depression. Following three years of treatment by his family physician, by a specialist in internal medicine and lung disease, and by two psychologists, Sheets' physical and psychological problems had not been resolved.

Several doctors, including Agro-West's expert witness, testified that, in their opinion, Sheets' problems were directly related to the accident. Agro-West's medical expert, a psychiatrist, testified that the stress or trauma which Sheets experienced—rather than the effects of the chemical—may have been responsible for Sheets' symptoms and that Sheets' symptoms might be more psychological than physical in origin. One of Sheets' medical witnesses, an expert on the toxic effect of chemicals, testified that the compounds that make up Terr-o-cide 30-D would cause physical effects similar to those suffered by Sheets.

There was expert testimony that Sheets' condition was treatable, but might not be curable, and that treatment might continue for anywhere from six months to five years or more. Testimony was given that Sheets lost earnings up to the trial date exceeding $38,000. There was evidence that his lost future earnings amounted to about $286,000 and loss of past and future household services amount to about $50,000. Sheets submitted proof of medical expenses amounting to over $7000. In the face of this evidence, the jury awarded damages totaling $46,839.-29, including $5000 for pain and suffering, $4400 for future reasonable medical services, $5000 for lost income prior to trial, about $22,000 for lost future income, and $3000 to Carolyn Sheets for damages to marital relations.

I.R.C.P. 59(a)(5) allows a court to order a new trial if the jury awards "excessive damages or inadequate damages, appearing to have been given under the influence of passion or prejudice." Where the difference between the jury's damage award and the amount the trial court would have awarded is so great as to suggest, but not establish, passion or prejudice, the granting of a new trial is appropriate. *Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979). The trial court here found such a disparity in awards and ordered a new trial. We hold there was no abuse of discretion.

The order of the trial court, directing that a new trial be held is affirmed.

SWANSTROM, J., concurs.

BURNETT, Justice, specially concurring:

This case presents another close encounter with the "abuse of discretion" standard of appellate review. The court holds that a district judge did not abuse his discretion in ordering a new trial, despite his failure to state the particular reasons upon which this discretionary decision was based. I am impelled to accept this result because our Supreme Court has held that such statements of reasons are unnecessary. I also note that the trial judge in this case has retired, diminishing the likelihood that a remand, to obtain a statement of reasons, would prove beneficial.

However, I believe that more judicial and scholarly attention should be focused upon the "abuse of discretion" standard. By writing separately today, I hope to encourage the view that this standard can be given greater meaning if we require trial judges to state their reasons for discretionary decisions. I further urge that this view be applied to orders for new trial.

I

"Discretion" has been defined as a power or privilege to act unhampered by legal rule. Black's Law Dictionary at 553 (rev. 4th ed. 1968). However, "judicial discretion" is a more restrained concept. Lord Coke is said to have defined judicial discretion as an inquiry into "what would be just according to the laws in the premises." *Id.* Judicial discretion "requires an actual exercise of judgment and a consideration of the facts and circumstances which are necessary to make a sound, fair, and just determination, and a knowledge of the facts upon which the discretion may properly operate." 27 C.J.S. *Discretion* at 289 (1959). Discretion which violates these restraints is discretion abused.

Therefore, to determine whether discretion has been abused, an appellate court must ascertain whether the trial judge has correctly perceived the "law in the premises" and has demonstrated due "consideration of the facts and circumstanc-

888

es." In *Lisher v. Krasselt*, 96 Idaho 854, 857, 538 P.2d 783, 786 (1975), our Supreme Court said:

> We decline to ascribe a definitive meaning to the amorphous phrase "abuse of discretion" solely for the purposes of this case, but it will suffice to say, that where the trial court has exercised such discretion after a careful consideration of the relevant factual circumstances and principles of law, and without arbitrary disregard for those facts and principles of justice, we will not disturb that action.

█ The clear import of *Lisher* is that an appellate court should not substitute its discretion for that of a trial court. This may seem a statement of the obvious, but it carries a profound implication. Appellate review of judicial discretion should not be result-oriented. An appellate court should not focus primarily upon the outcome of a discretionary decision below, but upon the process by which the trial judge reached his decision. In order for the appellate court to perform this function properly, it must be informed of the reasons for the trial court's decision. Unless those reasons are obvious from the record itself, they must be stated by the trial judge. Where the reasons are neither obvious nor stated, the appellate court is left to speculate about the trial court's perception of the law and knowledge of the facts. As a practical matter, the appellate court finds itself locked into a result-oriented review.

I do not suggest that every discretionary act must be accompanied by a statement of reasons. Many discretionary acts relate to the management of litigation, and do not directly affect the outcome of litigation. Examples of management discretion include the calendaring of cases, supervision of voir dire examinations of jurors, setting reasonable limits upon rebuttal testimony, and the like. These discretionary functions are seldom reviewed on appeal. When they are, we customarily uphold the trial court's action because appellate interference would unduly disturb the efficient operation of the trial courts. The exercise of such management discretion ordinarily does not carry with it an obligation to state particular reasons of record.

My greater concern is with the exercise of adjudicative discretion—discretion which determines or directly affects the outcome of litigation. Criminal sentencing, and child support, visitation and custody, are areas where discretion determines the outcome of a case. Granting relief from a default judgment and granting a new trial are examples of discretion which directly affects the outcome of litigation. Such acts of adjudicative discretion frequently are subjected to appellate review. Our deference to trial court action in these cases usually is based upon a recognition that the trial judge has actively participated in the proceedings below. *E.g., Smith v. Great Basin Grain Co.,* 98 Idaho 266, 561 P.2d 1299 (1977). The trial judge is in a better position than are we to evaluate the peculiar circumstances of each case, and to select among the available legal alternatives. A statement of reasons for the trial judge's decision—unless otherwise obvious—is necessary to justify such appellate deference.

II

█ I believe the time has come to require that a trial judge provide a statement of reasons when he grants a motion for a new trial. This exercise of adjudicative discretion has a substantial impact upon the litigants. It deprives the prevailing party of the benefit of victory, and it relieves the losing party of the burden of defeat. It confronts the parties with the prospect of investing considerable time, effort and money in a second trial. When a second trial does occur, it consumes the limited resources of our courts and disrupts the private lives of another set of jurors. Although an order for a new trial may not infringe upon trial by jury in a constitutional sense, it certainly represents a judicial invasion of the province of the first jury which sat in the case. *See* Comment, *Ruling on the New Trial Motion: What Standard for the Trial Judge,* 17 IDAHO L.REV. 249 (1981).

Discretion in ordering new trials cannot be eliminated by imposing rigid rules. Discretion is necessary to enable the trial judge to individualize his decision with respect to each unique case. *See generally* Rosenberg, *Judicial Discretion of the Trial Court, Viewed from Above,* 22 SYRACUSE L.REV. 635 (1971). When reviewing a decision to grant a new trial, an appellate court needs to know more than the result and the provision of a rule or statute which authorized the result. The appellate court should not be compelled to guess at the trial court's reasoning. Moreover, the process of identifying and articulating reasons for granting a new trial is a healthy discipline for trial judges. It is, perhaps, our best safeguard against "abuse of discretion."

It might be contended that requiring judges to state their reasons is an undue demand upon the time of a busy trial judge. However, where proceedings at trial clearly have gone awry, the reasons for granting a new trial can be readily identified and stated. In cases where the proceedings outwardly seem regular, but the judge nevertheless feels that an injustice has been done, it may be more difficult to identify and to state the reasons. However, these hard cases are precisely the cases where the discipline of stating reasons is most needed.

Alternatively, it might be contended that a trial judge can always find some reason to justify his decision, and the statement of such a reason would serve little purpose. However, I believe that Idaho trial judges are conscientious. They are unlikely to advance bogus reasons for their actions. In any event, the rare judge who is disposed to act arbitrarily will better be restrained by a requirement that he state reasons for his actions than by the present practice of condoning failure to state any reasons at all.

A requirement that reasons be stated would represent a logical culmination of Idaho law concerning orders for new trial. More than seven decades ago, our Supreme Court, in *Penninger Lateral Co. v. Clark,* 20 Idaho 166, 167, 117 P. 764, 765 (1911), said that "a trial judge ought always to state in his order granting a new trial the grounds on which the order is made." At that time, the Supreme Court's primary concern was not to prevent abuse of discretion, but to make appellate review more efficient by focusing upon certain grounds for granting a new trial rather than considering all conceivable grounds for such action. The Court noted that, "[m]uch time and labor would be saved if this request was complied with." *McAllister v. Bardsley,* 37 Idaho 220, 224, 215 P. 852, 853 (1923).

Today, this efficiency objective has been accomplished. I.R.C.P. 59(a) sets forth the general "grounds" upon which a new trial can be sought and granted. A moving party must identify the grounds upon which he relies; and, if those grounds include the insufficiency of the evidence or an allegation that the verdict is contrary to law, a more particular statement is required. Our Supreme Court has complemented Rule 59(a) by holding that a trial judge must indicate the general grounds upon which a new trial is granted. *E.g., Tibbs v. City of Sandpoint,* 100 Idaho 667, 603 P.2d 1001 (1979). Rule 59(d) also requires that such grounds be identified when the court orders a new trial on its own motion.

However, the overriding objective, preventing abuse of discretion, remains largely unserved. The Supreme Court has declined to require that a trial judge explain why he believes the general grounds recited under Rule 59(a) are applicable to the particular case at hand. *E.g., Deshazer v. Tompkins,* 93 Idaho 267, 460 P.2d 402 (1969). A mere recital of grounds under Rule 59(a) does not adequately explain the trial court's exercise of adjudicative discretion. Such a recital simply identifies the legal authority upon which the trial court proceeds. It tells an appellate court nothing about the particular facts or circumstances which the trial judge weighed in arriving at his decision. Moreover, a recital of grounds provided by rule does not impose upon a trial judge the healthy discipline which would be invoked by requiring an explanation of why those grounds are applicable.

As noted in our principal opinion today, the Supreme Court has on several occasions encouraged trial judges to go beyond mere recital of grounds, and to state their reasons for granting new trials. We do the same in this case. However, the fact that such encouragement repeatedly has been given in the past indicates that encouragement alone is not enough. If we are to preserve sound judicial discretion at the trial court level, and to avoid result-oriented appellate review of such discretion, we should now take the final step and require particular reasons to be stated.

I am authorized to say that WALTERS, C.J., and SWANSTROM, J., share the views expressed in this opinion.