727 P.2d 1242

Charles HARMSTON and Kay Harmston, husband and wife, Plaintiffs-Appellants,

v.

AGRO–WEST, INC., an Idaho corporation, Defendant-Respondent.

No. 15673.

Court of Appeals of Idaho.

Oct. 14, 1986.

Charles and Kay Harmston, plaintiffs-appellants pro se.

Jack S. Gjording and Bobbi Dominick (Elam, Burke and Boyd), Boise, for defendant-respondent.

WALTERS, Chief Judge.

In this personal injury case, the plaintiffs Charles and Kay Harmston appeal *pro se* from a judgment for defendant Agro-West, Inc. The Harmstons' opening brief raises

two general issues: they assert they were denied a "fair trial" and they question the consideration of evidence by the jury. Their reply brief lists forty-eight issues or inquiries. Ordinarily, issues raised only in a reply brief will not be addressed on appeal. *Owen v. Boydstun*, 102 Idaho 31, 624 P.2d 413 (1981). Nevertheless, nearly all of the issues stated in the Harmstons' reply brief are elaborations of arguments contained in their opening brief. The issues may be restated as: (1) whether there was misconduct by the jury; (2) whether there was error in the admission or exclusion of evidence; (3) whether expert testimony was accorded proper weight by the jury; (4) whether statements by the court or defense counsel constituted reversible error; (5) whether substantial and competent evidence supports the verdict; and (6) whether the trial court erred in denying the Harmstons' motion to strike certain jury instructions requested by the defense relating to contributory negligence. The Harmstons also express general dissatisfaction with the performance of their trial counsel. We hold that no reversible error occurred and we affirm.

Agro-West is a distributor of farm chemicals. In June of 1978 approximately 500 gallons of Terr-o-cide 30D, a pesticide, was spilled at Agro-West's outlet in Wilder, Idaho. Shortly after the spill, and while the chemical was being cleaned up, Kay Harmston arrived at a nearby school to interview for a job. The school building had been evacuated prior to her arrival. While exploring the school grounds, Mrs. Harmston learned of the chemical spill and immediately left the area. Soon after, and over the next six years, she suffered from numerous ailments and symptoms. According to evidence submitted at trial, her disorders included: nervousness, dizziness, headaches, depression, personality changes, insomnia, irritability, chest pain, respiratory distress, sore throat, cough, pneumonia, cancer of the colon, increased blood triglycerides, abdominal pain, damaged and enlarged liver, an ectopic pregnancy, altered libido, sloughing of bowel and bladder tissue, sore joints, and general environment

sensitivity. Numerous physicians were contacted in an attempt to obtain relief.

The Harmstons brought an action based upon negligence and strict liability theories. They contended that some or all of Mrs. Harmston's ailments were the result of her exposure to Terr-o-cide 30D. Following a two-week trial with extensive expert testimony, the jury rendered a special verdict in favor of Agro-West. The jury attached a note to the verdict, stating:

> We, the jury, recommend to the Court that Agro-West, Inc., reimburse plaintiff Kay Harmston one thousand, eight hundred twenty five dollars & sixty-five cents ($1,825.65), her costs for her 2 hospital stays in Caldwell Memorial Hospital on June 22, 1978 & July 2 to July 7, 1978, as an indication of the good will of the Corporation.

Judgment was entered upon the verdict, decreeing that the plaintiffs recover nothing against Agro-West.

As noted, the Harmstons contend that numerous errors in the conduct of the trial and in the jury's deliberation collectively denied them a fair trial. The issues—as we have restated them—will be discussed in turn.

### Jury Conduct

Upon submission of the case, the jury rendered its verdict after approximately four hours of deliberation. The Harmstons contend that the four-hour deliberation period evinces a failure by the jury to properly weigh the evidence and suggests a verdict rendered on the basis of sympathy or prejudice. In particular, the Harmstons argue that the jury failed to comply with an instruction that, "you are to apply the law to the facts and in this way decide the case. Neither sympathy nor prejudice should influence you." *See* ID.J.I. 100 (1974). The Harmstons also argue that the jury's supplemental recommendation, concerning reimbursement for hospitalization expenses, contradicts the jury's special verdict.

We are pointed to no rule of law requiring a minimum period for jury delib-

eration. Although a complex case such as this one may present particularly difficult questions, the jurors are entitled to examine the evidence in the manner they deem appropriate. Proportional deliberation periods are not required. Juries are presumed to have considered and followed the instructions provided. *Blaine v. Byers,* 91 Idaho 665, 429 P.2d 397 (1967). Absent any other evidence pointing to misconduct by the jury, we find no error flowing from the time period of deliberation.

■ The Harmstons also submit that the verdict was contradictory on its face in light of the jury's supplemental recommendation. Ordinarily, where either the court or counsel consider a verdict to be uncertain, the proper procedure is to refuse to accept it and request correction by the jury. *Baldwin v. Ewing,* 69 Idaho 176, 204 P.2d 430 (1949). According to the record before us, neither counsel nor the court sought correction of the verdict by the jury. The trial judge chose simply to ignore the jury's recommendation. The transcript of the trial does not indicate that this recommendation was precipitated by any comments of the trial judge or of counsel. The recommendation appears to have been a spontaneous suggestion by the jury. We hold the trial judge's disregard of the jury's suggestion was proper in light of the phrasing of the recommendation. We cannot say as a matter of law that recommending payment "as an indication of the good will of the Corporation" contradicted the verdict.

### Evidence

■ The Harmstons also assert errors relating to the admission or suppression of evidence. They argue that the trial judge erred in excluding the "records" of one of Mrs. Harmston's physicians, Dr. Knight. Dr. Knight's billing statements were admitted. However, the transcript of the trial does not disclose that the doctor's other "records" were ever offered. During trial, in response to an inquiry from the court, the Harmstons' counsel stated that all exhibits which the plaintiffs intended to offer into evidence had been admitted. We find no error relating to the exclusion of Dr. Knight's "records."

■ Similarly, the Harmstons contend that information regarding a case arising out of the same chemical spill, *Sheets v. Agro West, Inc.,* 104 Idaho 880, 664 P.2d 787 (Ct.App.1983), should have been admitted. In *Sheets* we affirmed the trial court's order granting a new trial. 104 Idaho at 887, 664 P.2d at 794. Thereafter, following remand, apparently Mr. Sheets settled his claim with Agro-West. The Harmstons now argue that the jury in their case should have been made aware of the Sheets dispute and settlement as an indication of liability of Agro-West for claims arising from the same chemical spill. The record here discloses that Agro-West sought a pre-trial ruling *in limine* "to preclude the plaintiffs in any way, shape or form from referring to the case of David Sheets versus Agro-West...." The Harmstons' trial counsel did not oppose Agro-West's motion to suppress reference to the *Sheets* case, except with respect to its use for possible impeachment of witnesses, particularly Mr. Sheets if he was called as a witness. Accordingly, the court ordered the parties to instruct their witnesses that no mention of the *Sheets* trial or settlement would be made in the instant trial. The admission or exclusion of this kind of evidence is committed to the sound discretion of the trial court for a weighing of the advantages and disadvantages of using the evidence. C. McCORMICK ON EVIDENCE § 200 (3d ed. 1984). *Compare Luther v. Howland,* 101 Idaho 373, 613 P.2d 666 (1980) (evidence of the negligent conduct of a party on other occasions, which is used as an attempt to show a propensity for similar negligent conduct in the case in question, is not admissible); *Hatfield v. Max Rouse & Sons Northwest,* 100 Idaho 840, 606 P.2d 944 (1980) (settlement offers are inadmissible). We hold the court below did not abuse its discretion in ordering exclusion of any reference to the *Sheets* case.

## Weight of Expert Testimony

The Harmstons next argue that the testimony of their experts, an occupational health specialist and a pathologist, was not accorded proper weight. They contend that the jury should have found the testimony to be conclusive or that other experts called by the defense should have deferred to the opinions of these specialists. We disagree. The credibility and weight of expert testimony, once an expert has been qualified, is exclusively a matter for determination by the jury. *Larsen v. Uriona*, 107 Idaho 925, 693 P.2d 1127 (Ct. App.1985). I.C. § 9–201. An expert's opinion is not binding on the jury and may be rejected even when uncontradicted. *Rueth v. State*, 103 Idaho 74, 644 P.2d 1333 (1982); *Simpson v. Johnson*, 100 Idaho 357, 597 P.2d 600 (1979). In this case contradictory testimony was presented. Credentials and specialties alone do not determine the weight of expert testimony. The jury was entitled to accept or reject, in whole or in part, the opinion testimony of each party's experts.

## Judge and Attorney Conduct

The Harmstons contend that comments by the trial judge and by defendant's counsel either prejudiced the jury or constituted improper conduct abusing or influencing witnesses. We are referred to four types of statements: an alleged expression of disbelief by the trial judge during the testimony of Dr. Gray, one of plaintiffs' experts; warnings by the trial judge regarding the possibility of a mistrial; defense counsel's disrespect for and abuse of plaintiffs' experts; and out-of-court statements by defense counsel directed to plaintiffs' witnesses.

Regarding the trial judge's conduct, we have examined the record in this case and find nothing to substantiate the Harmstons' contentions. The Harmstons assert that the judge stated during the trial that he did not believe Dr. Gray's testimony. We find no such statement by the judge in the record. We do find that Dr. Gray was extensively interrogated outside the presence of the jury, in an offer of proof by the plaintiffs regarding alleged brain damage suffered by Mrs. Harmston. Dr. Gray had testified to the jury that Mrs. Harmston suffered from kidney or bladder problems as a result of brain damage from inhaling chemical fumes. Defense counsel objected to Dr. Gray's conclusion on the basis of a lack of foundation for that opinion. The jury was then excused. After the jury left, defendant's counsel also suggested that if Dr. Gray continued to offer opinions without proper foundation, a mistrial would be requested. While the jury was absent, the plaintiffs were allowed to proceed with an offer of proof to support Dr. Gray's opinion. Several times during that proceeding the court ruled that the foundation was not established. The court at one point stated that Dr. Gray was "engaging in speculation." The court at the conclusion of the day stated:

And I'm not going to make any ruling on this until you can come up with a better organized offer of proof, how to approach this situation of brain damage.

You can either back off of it or you can lay some foundation to show the jury how come she has got it. And naming all the symptoms, not just this one. The way it came over it just seemed like you jumped from this one position to brain damage.

And I couldn't see that and still don't see it. If there are other symptoms of brain damage, I'd expect—and that is the conclusion you want the jury to reach, that she has brain damage because of this incident, then you're going to have to lay out all of the symptoms and not just that one.

The next morning, before the jury was reconvened, the court added:

... I was pondering about that [foundation objection] over the night. I believe that if everybody—particularly the plaintiffs and the plaintiffs' witnesses— recognizes that the way you build a case is like an Eskimo builds an igloo, block by block, piece by piece, one on top of the other instead of trying to hang a block

up here in the sky without foundation. Maybe we can make this case go in a little more order.

I think maybe that the question—if the foundation is laid, they can come up with proof on the issue of brain damage, and so I would not be disposed to instruct the jury at this point to disregard it nor to grant your mistrial based on a remark that was made at this point in time. I mean it's conceivable that—the questioning conceivably should be block by block if they can make that a prima facie case in that area.

Following these rulings by the trial court, the subject of brain damage was not pursued any further; however, additional testimony by Dr. Gray was submitted to the jury regarding kidney and bladder damage. Considering the trial court's rulings and comments in proper context, we believe the court was expressing a legal conclusion as to the sufficiency of foundation evidence. Contrary to the Harmstons' contention, the court's statements were not an expression of disbelief of Dr. Gray's testimony. We find no error in the court's comments.

■ The Harmstons also contend the trial court's references to a mistrial were prejudicial. The record contains three references by the court, in addition to the one quoted above, relating to mistrial. They all occurred outside of the presence of the jury and came about as follows. For reasons of cost and convenience, the plaintiffs presented testimony from witnesses who were called out of order. Consequently, the plaintiffs attempted to present evidence without first establishing sufficient foundation. In acceding to the plaintiffs' request to present evidence out of order, the court explained the potential for a mistrial. The court noted that the plaintiffs were running the risk that if the foundation testimony was not later presented the court would be faced with the possibility of declaring a mistrial. Such admonitions were appropriate in this context. We find no error in this procedure nor in the rulings and explanations given by the court.

■ Next the Harmstons contend that defense counsel's cross-examination of plaintiffs' experts was disrespectful and abusive. Our review of the record discloses no impropriety in defense counsel's manner of cross-examination. Our system of dispute resolution permits and encourages challenges to the credentials and opinions of an opponent's experts. The limiting and control of cross-examination is within the province of the trial judge. *State v. Cypher*, 92 Idaho 159, 438 P.2d 904 (1968); *State v. Linebarger*, 71 Idaho 255, 232 P.2d 669 (1951). The record here does not show that the trial judge was ever requested by the plaintiffs to admonish defense counsel in regard to his cross-examination. Although the plaintiffs may have preferred a more professorial atmosphere in their trial, we find no misconduct presented in the record.

■ Neither does the trial record substantiate plaintiffs' claim of witness intimidation. We have found one instance in the record—again, outside the presence of the jury—where plaintiffs' counsel reported that, at the conclusion of Dr. Gray's testimony and apparently in a private conference, defense counsel "made the statement to Dr. Gray that could easily be interpreted as attempting to intimidate the witness." The trial record shows only this general reference to the alleged statement. The record does not show what specifically was said by defense counsel nor that the trial judge was ever informed of the specifics of the purported statement. Plaintiffs' counsel simply indicated that defense counsel should be cautioned and the trial judge chose to ignore the incident. Further, there is no indication in this record that the remark by defense counsel to Dr. Gray affected the testimony given by Dr. Gray. There is no evidence that Dr. Gray's testimony was colored by any intimidation.

■ A bare claim of misconduct is not sufficient to constitute reversible error. "For a question of misconduct of counsel to be considered on appeal, the record must sufficiently set out the matters relating

thereto and this court is limited to a review of such questions as are properly raised, preserved and submitted by sufficient record." *Hayward v. Yost,* 72 Idaho 415 at 423, 242 P.2d 971 at 975 (1952). We are unpersuaded that any reversible error has been shown.

### Verdict and Instructions

■ We turn next to the Harmstons' contentions that the verdict is not supported by the evidence and that the court should not have given contributory negligence instructions. To review these questions, it might be helpful to understand the burden upon the plaintiffs at trial. In both negligence and strict liability tort actions the plaintiffs bear the burden of proving each element of their case by a preponderance of the evidence. *Ebert v. Newton,* 97 Idaho 418, 546 P.2d 64 (1976). A verdict for the defendant may reflect a successful defense or a failure of the plaintiff to carry its burden. Here, Agro-West presented evidence contradicting the Harmstons' claims of significant exposure to Terr-o-cide 30D. Agro-West also presented expert opinion evidence contrary to the Harmstons' proximate cause theory. In this case the relevant special verdict questions were as follows:

> Was there negligence on the part of the Defendant, Agro-West, Inc., which was a proximate cause of the injuries or diseases of Kay Harmston?
>
> Was the chemical spill a proximate cause of the injuries or diseases of Plaintiff, Kay Harmston?

The jury answered "No" to each question.

■ On appellate review, a verdict supported by substantial, though conflicting, evidence will not be set aside. *Big Butte Ranch, Inc. v. Grasmick,* 91 Idaho 6, 415 P.2d 48 (1966); *Challis Irrigation Co. v. State,* 107 Idaho 338, 689 P.2d 230 (Ct.App.1984). Here, the jury may have found that the Harmstons failed to establish one or more elements of their claim. Alternatively, the jury may have accepted Agro-West's evidence that Kay Harmston's disorders were psychosomatic and not actually caused by the chemical spill. There is substantial evidence in this case from which the jury reasonably could have reached its decision based on either of these approaches. Thus, we will not disturb the verdict. Furthermore, having resolved each claim in favor of Agro-West, the jury did not reach the questions relating to contributory negligence. Therefore, we find it unnecessary to decide whether the trial judge erred in denying the Harmstons' motion to strike instructions regarding contributory negligence.

■ The Harmstons' other assertions of error either are equally without merit, or relate to dissatisfaction with the tactical decisions and performance of their two attorneys at trial. We understand the dismay felt by the Harmstons because of the result obtained at trial. Civil plaintiffs freely choose their attorneys and cannot readily avoid the consequences of their attorneys' actions. *Devault v. Steven L. Herndon, P.A.,* 107 Idaho 1, 684 P.2d 978 (1984). Generally speaking, we will not second-guess tactical decisions by trial counsel. Furthermore, the Harmstons do not cite specific instances in the trial record of attorney negligence or misconduct. We are not required independently to search the record for error. *State v. Crawford,* 104 Idaho 840, 663 P.2d 1142 (Ct.App.1983). Also, we are restricted to the record and may not consider matters outside that record. *Schneider v. Curry,* 106 Idaho 264, 678 P.2d 56 (Ct.App.1984). We are unpersuaded that the Harmstons' dissatisfaction either with the result at trial or with their attorneys' performance should compel a retrial of the cause.

A more in-depth analysis of the remaining assertions of error would serve little purpose. It is apparent that Kay Harmston is sincere in her belief that the chemical spill was the proximate cause of her injuries. However, our system of justice relies not upon the sincerity of a party, but upon the decision of an impartial fact-finder presented with admissible evidence. We affirm the judgment.

Agro-West requests attorney fees on appeal. In large part the Harmstons simply have sought to re-try and re-argue their case. However, the issue concerning the jury's supplemental recommendation did present a justifiable question for appellate review. Therefore, we cannot say that this appeal leaves us "with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Minich v. Gem State Developers, Inc.*, 99 Idaho 911 at 918, 591 P.2d 1078 at 1085 (1979). For that reason, we decline to award fees to Agro-West.

The judgment is affirmed. Costs to respondent, Agro-West, Inc. No attorney fees on appeal.

BURNETT, J., and SWANSTROM, JJ., concur.